Dismissed in Part and Reversed and Remanded in Part and Opinion
filed March 31, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00281-CV



Clifton Thomas,
M.D. and Sharon Lambi, P.A.,
Appellants 

v.

Aracelly Torrez,
Individually, and as Representative of the Estate of Ricardo Torrez and as Next
Friend of Ricardo Isaiah Torrez, Minor Child, Appellee 



On Appeal from
the 215th District Court

Harris County, Texas

Trial Court
Cause No. 2009-51865



 

OPINION 

The wife of a man who died in a hospital following
surgery filed wrongful-death and survival claims against a surgeon and a
physician’s assistant.  The trial court sustained the objections of these defendants
to the sufficiency of the reports from the plaintiff’s experts; but, rather than
dismiss the claims, the trial court granted a thirty-day extension under
section 74.351(c) of the Texas Civil Practice and Remedies Code and denied
these defendants’ motions to dismiss under section 74.351(b).  The surgeon and the
physician’s assistant now seek to appeal from this order.  As to the surgeon,
we conclude that the plaintiff served a report that was found deficient within
the meaning of section 74.351(c); therefore, we dismiss the surgeon’s appeal
for lack of jurisdiction under section 51.014(a)(9) of the Texas Civil Practice
and Remedies Code.  But as to the physician’s assistant, we conclude that the
plaintiff served no report that could be found deficient.  Therefore, we have
jurisdiction over the physician’s assistant’s appeal, and we reverse and remand
as to the physician’s assistant.  

I.  Factual and Procedural
Background

Ricardo Torrez underwent bariatric surgery at
Renaissance Hospital, and he continued to receive care there following the
surgery.  Five days later he died in the hospital. Appellee/plaintiff Aracelly
Torrez, individually, and as representative of the estate of Ricardo Torrez and
as next friend of Ricardo Isaiah Torrez, minor child (hereinafter, the “Claimant”)
filed suit against the two appellants, Clifton Thomas, M.D., and Sharon Lambi,
P.A., and also against Bryan C. Lipsen, M.D., Raman Mocharla, M.D., Tsehay
Tekeste, R.N., Renaissance Hospital Houston, Inc., and other corporate
entities.  The Claimant asserted wrongful-death claims on her own behalf and on
behalf of her son; she also asserted a claim under the survival statute.  Alleging
numerous negligent acts or omissions, the Claimant asserted health care
liability claims against all defendants under chapter 74 of the Texas Civil
Practice and Remedies Code.[1] 


Within 120 days of filing suit, the Claimant served
reports and curricula vitae from three experts: James D. Leo, M.D., F.C.C.P.;
Mitchell Scott Whiteman, M.D.; and Jenny Beerman, R.N., M.N.  All defendants
filed objections to the sufficiency of these reports under section 74.351(a)
and moved to dismiss the Claimant’s claims under section 74.351(b).  After oral
hearing, the trial court sustained the objections of Dr. Thomas and Lambi (hereinafter,
collectively the “Health Care Providers”) to the sufficiency of the reports.  The
trial court granted a thirty-day extension under section 74.351(c) and denied
these parties’ motions to dismiss under section 74.351(b).  Invoking section
51.014(a)(9) of the Texas Civil Practice and Remedies Code, the Health Care
Providers have sought to appeal the trial court’s denial of their motions to
dismiss.  The Claimant asserts that this court lacks appellate jurisdiction
under this statute because, in the order from which the Health Care Providers
seek to appeal, the trial court granted an extension under section 74.351(c).  See
Tex. Civ. Prac. & Rem. Code Ann
§ 51.014(a)(9) (West 2008) (allowing appeal from an order that denies a motion
under section 74.351(b) “except that an appeal may not be taken from an order
granting an extension under Section 74.351”).  

II.  Analysis

            In
their sole issue, the Health Care Providers assert that the trial court erred
in denying their motion to dismiss the claims against them under section
74.351(b).  The Health Care Providers assert that this court has appellate
jurisdiction because the three reports served by the Claimant constitute “no
report” as to the Health Care Providers.  We first consider developments in the
law regarding this jurisdictional issue and then examine whether this court has
jurisdiction as to each of the Health Care Providers.

A.        The
Requirements of Section 74.351

            Within
120 days of filing the original petition (“Time Period”), a claimant in a
health care liability claim must serve on each party or the party’s attorney an
“expert report” for each physician or health care provider against whom the
claimant asserts a liability claim, along with a curriculum vitae for each
expert.[2] 
See Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(a) (West 2011).  To satisfy this requirement, the
report must be “a written report by an expert that provides a fair summary of
the expert’s opinions as of the date of the report regarding applicable
standards of care, the manner in which the care rendered by the physician or
health care provider failed to meet the standards, and the causal relationship
between that failure and the injury, harm, or damages claimed.”  Id. §
74.351(r)(6); see also id. § 74.351(r)(5) (defining “expert” as used in
the definition of “expert report”).  A claimant can satisfy this statutory
requirement by serving reports of separate experts who address different
defendants or who address different required elements, as long as the reports,
taken together, contain all required elements for an “expert report.”  See
id. § 74.351(a), (i), (r)(6).  Each defendant physician or health care
provider whose conduct is implicated in a report must file and serve any
objection to the sufficiency of a report not later than the twenty-first day
after the date the report was served; otherwise the defendant’s objections are
waived.  See id.  

            If,
as to a defendant physician or health care provider, a claimant has not served
an “expert report” within the Time Period, on the motion of the affected defendant,
the trial court shall, subject to one exception, (1) dismiss with prejudice the
claims against the defendant in question, and (2) award the defendant
reasonable attorney’s fees and court costs incurred by that defendant.  See
id. § 74.351(b).  The exception to the foregoing rule is that the trial
court may grant one thirty-day extension to a claimant to cure deficiencies in
a report or reports if a claimant has not served an “expert report” within the
Time Period “because elements of the report are found deficient.”  Id. §
74.351(c).  

B.        Potentially
Confusing Statutory Terms

Under
the unambiguous language of section 74.351, a claimant satisfies the “expert
report” requirement as to a defendant only by properly serving within the Time
Period, a report or reports that satisfy all the requirements for an “expert
report” as to that defendant.  See id. § 74.351(a), (b), (i), (r)(6).  The
following are some of the ways in which a claimant can fail to serve an “expert
report” as to a defendant:

·       
A
claimant serves nothing at all on any defendant.

·       
A
claimant serves a report in an attempt to satisfy all the requirements for an
“expert report” as to that defendant but fails in this attempt because elements
of the report are found to be deficient.  

·       
A
claimant serves a report in an attempt to satisfy all the requirements for an
“expert report” as to other defendants, but the report does not implicate the
conduct of the defendant in question.

See
id.
§ 74.351(a), (c); Ogletree v. Matthews, 262 S.W.3d 316, 320 & n.2
(Tex. 2007).    To say that a claimant served no expert report as to a
defendant does not indicate whether the claimant served no report at all or
whether the claimant served a report unsuccessfully attempting to satisfy the
requirements for an expert report as to that defendant.  The latter situation
can be distinguished from the former by stating that the claimant served a
“deficient report” as opposed to “no report.”  See Ogletree, 262 S.W.3d at
320 & n.2.  But under the nomenclature used in the statute, both a
“deficient report” and “no report” fall within the category of “no expert
report.”  See Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(a), (c); Ogletree, 262
S.W.3d at 320 & n.2.  

C.        Cases
Regarding Appellate Jurisdiction under Section 51.014(a)(9)

In
Ogletree, the defendant urologist objected to the plaintiff’s reports
only on the grounds that no curriculum vitae was served as to one expert and
that none of the experts was qualified to testify regarding the alleged
negligence of a urologist.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (requiring that “expert
report” be made by an “expert”); id. § 74.351(r)(5) (defining “expert”
and including requirements regarding qualifications of experts); Ogletree,
262 S.W.3d at 317–18.  The Ogletree court noted that one report was
directed solely to the defendant urologist’s care.  See id. at 318.  In
this report, the expert opined that the procedure performed by the urologist
should have been done with fluoroscopic guidance and that, with such guidance,
the plaintiff’s injury might well have been avoided or at least minimized.  See
id.  The Ogletree court did not mention whether this expert stated a
standard of care for the urologist in the report, but the defendant did not
object to any such failure.  See id. at 317–18.  The trial court found
that this report was deficient, denied the urologist’s motion to dismiss, and
granted the plaintiff a thirty-day extension to cure the deficiencies in this
report.  See id. at 317–18.  

The Ogletree court had to decide whether
appellate courts had jurisdiction over the urologist’s appeal from the trial
court’s order under section 51.014(a)(9).  See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (allowing
appeal from an order that denies a motion under section 74.351(b) “except that
an appeal may not be taken from an order granting an extension under [s]ection
74.351”).  The Ogletree court distinguished between a deficient report
and no report.  See Ogletree, 262 S.W.3d at 320–21.  Concluding that the
plaintiff had served a report within the Time Period and that the report was
deficient, the Ogletree court concluded that this report was a
“deficient report” as to the defendant urologist.  See id.  Without
addressing the outcome in the “no report” scenario, the Ogletree court
held that a defendant cannot appeal the denial of a motion to dismiss under section
74.351(b) if the trial court also granted a thirty-day extension under section
74.351(c) to give the plaintiff an opportunity to cure a report that was
deficient as to that defendant.  See id. at 320–21.  The Ogletree
court indicated that a deficient report was one that “implicated [the defendant
in question’s] conduct.”  Id. at 321.  

In
Rivenes v. Holden, the trial court denied Dr. Rivenes’s motion to
dismiss under section 74.351(b) and granted an extension under section
74.351(c).  See 257 S.W.3d 332, 335 (Tex. App.—Houston [14th Dist.]
2008, pet. denied).  The Rivenes court held that it nonetheless had
appellate jurisdiction over Dr. Rivenes’s appeal because the case fell within
the “no report” category and because section 51.014(a)(9) allows a defendant to
appeal the denial of his motion to dismiss under section 74.351(b) if, as to
that defendant, the plaintiff served “no report” within the Time Period.  See
id. at 340–41.  The Rivenes court held that, although the plaintiff
served a report within the Time Period, the expert in this report (1) addressed
the conduct of other defendants, (2) did not offer any opinions concerning the
conduct of Dr. Rivenes or implicate his conduct, (3) did not discuss whether
the care rendered by Dr. Rivenes failed to meet the applicable standard of
care, and (4) did not address how any alleged conduct by Dr. Rivenes caused the
plaintiff to suffer injury or damage.  See id. at 337–39.  The Rivenes
court held that it had appellate jurisdiction under section 51.014(a)(9)
because, as to Dr. Rivenes, the plaintiff’s report was “no report” rather than
a “deficient report.”  See id. at 338, 340–41.

The
Supreme Court of Texas confronted a similar issue in Badiga v. Lopez, a case
in which the plaintiff filed a health care liability claim against a single
defendant doctor.  See 274 S.W.3d 681, 682 (Tex. 2009).  The plaintiff
served no report whatsoever within the Time Period.  See id.  The trial
court denied Dr. Badiga’s motion to dismiss under section 74.351(b) and granted
a thirty-day extension under section 74.351(c).  See id.  The trial
court’s granting of an extension was erroneous because an extension in not
available as a matter of law if the plaintiff serves no report as to a
defendant.  See id. at 683.  But the issue in Badiga was not
whether the trial court erred but whether the appellate court had jurisdiction
under section 51.014(a)(9) over Dr. Badiga’s appeal from the denial of his
motion to dismiss.  See id. at 682.  The Badiga court noted that,
under section 51.014(a)(9), the legislature did not permit an interlocutory appeal
from an order granting an extension under section 74.351.  See id. at
683.  Nonetheless, the Badiga court held that this ban on interlocutory
appeals does not apply to all orders in which the trial court grants an
extension under section 74.351(c).  See id. at 683–85.  And, the Badiga
court held that the ban does not apply if the trial court erroneously granted
an extension to a plaintiff who served “no report” within the Time Period as to
the defendant in question.  See id.  

Though
the facts of the two cases were different, the Badiga court and the Rivenes
court both concluded that the ban on interlocutory appeals in section 51.014(a)(9)
does not apply if the plaintiff served “no report” within the Time Period as to
the defendant in question.  See id.; Rivenes, 257 S.W.3d at
340–41.  In sum, if the Claimant served a deficient report as to the Health
Care Providers, then this court lacks jurisdiction over their appeals.  See
Ogletree,
262 S.W.3d at 320–21.  But this court does
have jurisdiction over their appeals to the extent that the Claimant served “no
report” as to the Health Care Providers.  See Badiga, 274 S.W.3d at
683–85; Rivenes, 257 S.W.3d at 340–41.  

D.        Appellate
Jurisdiction as to the Surgeon

            Dr.
Thomas performed the surgery on Ricardo Torrez and, according to the petition
and the reports served by the Claimant, Dr. Thomas continued to provide care to
Ricardo Torrez after the surgery.  In Dr. Leo’s report (hereinafter the “Leo
Report”), Dr. Leo focuses his attention primarily on the
conduct of Drs. Lipsen and Mocharla.  Nonetheless, in his report, Dr. Leo makes
the following statements:

[Ricardo Torrez]
underwent an attempt at laparoscopic Roux-en-Y gastric bypass by Dr. Clifton
Thomas, which had to be converted to an open procedure due to technical factors. 
Other than the need for conversion to an open procedure, the operation went
well ….

On the first
post-operative day [November 13, 2007], … Dr. Thomas’s impression was that
[Ricardo Torrez] was doing well. On November 14, 2007, on the second
post-operative day, Dr. Thomas noted that [Ricardo Torrez] was complaining of
shortness of breath and was anxious without the use of CPAP (continuous
positive airway pressure).  Dr. Thomas suspected atelectasis (lung collapse)
aggravated by a too-tight abdominal binder.  His plan was to obtain a chest
x-ray and to consult Dr. Lipsen, a nephrologist.  The order for chest x-ray was
noted at 0940 hours.

. . .

There is no evidence
from the medical record [sic] that either Dr. Lipsen or Dr. Thomas ever sought
either the report of this chest x-ray or the x-ray films themselves. . .

On November 15,
2007, Dr. Thomas noted that [Ricardo Torrez] was breathing better with a 98% O2
saturation. . . .

On November 16,
2007, Dr. Thomas noted continued improvement in shortness of breath and a O2
saturation of 95%.  He found the lungs to be clear, but diagnosed [Ricardo]
with persistent atelectasis. . . .

On November 17,
2007, a progress note at 0915 hours noted the presence of chest pain with
difficulties taking deep breaths.  Lungs were noted to be clear.  Dr. Thomas
was informed of the shortness of breath, and the note stated that Dr. Thomas
“is to follow.”

. . .

The standard of care
required that the physician assessing Mr. Torrez for his shortness of breath
either review the chest x-rays themselves [sic] or, at the least, discuss the
findings with the radiologist if a written report was not present on the chart
in a timely manner.  

. . .

Dr. Lipsen breached
the standard of care by failing to apprise himself of the results of Mr.
Torrez’s chest x-rays obtained on November 14 and November 15. . .

It is my opinion
that Dr. Mocharla breached the standard of care in failing to notify Dr. Thomas
on November 14 of the finding of a possible pneumothorax. . .

It is my opinion
that the breaches of the standard of care enumerated above were directly
causative in Mr. Torrez’s death. . . .

. . .

Had Dr. Mocharla
communicated the suspicion of a pneumothorax directly to either Dr. Thomas or
Dr. Lipsen, a CT scan of the chest would have been ordered (assuming that the
physician so notified would have acted within the standard of care), and, to a
reasonable medical probability, the pneumothorax would have been diagnosed and
subsequently treated with a tube thoracostomy, as described above.  To a
reasonable medical probability, such treatment would have safe [sic] Mr.
Torrez’s life.

 

Dr. Leo did not state in his report that he was
limiting his opinions to certain defendants.  Dr. Leo stated that (1) Dr.
Thomas continued to render care to Ricardo Torrez following surgery; (2) a
physician assessing Ricardo Torrez for shortness of breath should either review
any chest x-ray himself or discuss the findings with the radiologist; and (3)
the medical records contain no evidence that Dr. Thomas ever sought either the
report of the first chest x-ray or the x-ray films themselves.  

In analyzing this jurisdictional issue, we are not
reviewing the sufficiency of Dr. Leo’s report or the merits of the trial
court’s denial of Dr. Thomas’s motion to dismiss.  Instead, we decide only
whether Dr. Leo’s report was a deficient report or “no report” as to Dr.
Thomas.  Dr. Leo’s report indicates that Dr. Thomas ordered the first chest
x-ray,[3]
that Dr. Thomas should have reviewed this x-ray himself or talked to the
radiologist regarding this x-ray, and that he failed to do so.  On this record,
we conclude that Dr. Leo’s report implicated Dr. Thomas’s conduct and that Dr.
Leo’s report was a “deficient report” as to Dr. Thomas.  See Ogletree,
262 S.W.3d at 320–21 (concluding that report was “deficient report” and implicated
defendant’s conduct even though it did not mention defendant’s name because it
was directed at defendant’s care, stated that the procedure should have been
performed with fluoroscopic guidance and that plaintiff’s injury could have
been avoided had the procedure been performed in this manner); Certified
EMS, Inc. v. Potts, No. 01-10-00106-CV, —S.W.3d—,—, 2011 WL 286164, at *1–3
(Tex. App.—Houston [1st Dist.] Jan. 27, 2011, no pet. h.) (holding that report
in which nursing expert stated that employee engaged in substandard nursing
practice and was employed by an unknown temporary nursing agency or service was
sufficient to implicate the conduct of the defendant employer so that report
was deficient rather than “no report”).  

Dr. Thomas cites Apodaca v. Russo, a case in
which the plaintiff appealed from the trial court’s granting of the defendant’s
motion to dismiss under section 74.351(b) and its denial of an extension under
section 74.351(c).  See 228 S.W.3d 252, 254 (Tex. App.—Austin 2007, no
pet).  Unlike the case under review, in Apodaca, the only report served
by the plaintiff did not mention the defendant doctor or any alleged conduct of
the defendant doctor.  See id. at 255–57.  The Apodaca case is
not on point.

Dr. Thomas also cites Beckwith v. White.  See
285 S.W.3d 56, 62 (Tex. App.—Houston [1st Dist.] 2009, no pet.).  Though Beckwith
did not involve any issue of whether the appellate court had jurisdiction
under section 51.014(a)(9), Beckwith involved the issue of whether a
report implicated a defendant’s conduct under section 74.351(a) so as to
trigger the requirement that the defendant assert any objections to the
sufficiency of the report within twenty-one days of the date the report was
served.  See id.  Dr. Thomas argues that Beckwith stands for the
proposition that, to implicate a defendant’s conduct, a report must (1) be
directed primarily to the care provided by that defendant, (2) inform the
defendant of specific conduct called into question, and (3) provide a basis for
the trial court to determine that the claim has merit.  See id.  We
construe the Beckwith opinion as stating that such a report is
sufficient to implicate a defendant’s conduct but not necessary to do so.  See
id.  If such a report were necessary to implicate a defendant’s conduct so as
to trigger the exception in section 51.014(a)(9), then many deficient reports
would be classified as “no reports,” and this exception would be significantly
limited, contrary to the Supreme Court of Texas’s opinion in Ogletree.  See
Ogletree, 262 S.W.3d at 318–21.  We conclude that the Beckwith court
does not supply a legal standard to be used in determining whether a report
falls under the “deficient report” category described in Ogletree.  See
id.

Dr. Thomas asserts that Dr. Leo does not specify the
standard of care for Dr. Thomas.  It is true that Dr. Leo never states that a
specific standard of care applies to Dr. Thomas;  but, Dr. Leo states that “the
standard of care required that the physician assessing Mr. Torrez for his
shortness of breath either review the chest x-rays themselves [sic] or, at the
least, discuss the findings with the radiologist if a written report was not
present on the chart in a timely manner.”  Though this statement is contained
in a paragraph addressing Dr. Lipsen’s conduct, Dr Leo states earlier in his
report that, in rendering post-operative care, Dr. Thomas noted Ricardo Torrez
was complaining of shortness of breath and that there was no evidence from the
medical records that Dr. Thomas ever sought either the report of the first
chest x-ray or the x-ray films themselves.  Dr. Leo’s statement of this
standard of care can be construed as applying to both Dr. Thomas and Dr. Lipsen
for the purposes of determining whether the Claimant served a report as to Dr.
Thomas.[4] 
In any event, the Ogletree court did not mention that the report in that
case stated a standard of care for Dr. Ogletree, and we conclude that Dr. Leo’s
report still would be a report as to Dr. Thomas, even presuming that this
sentence did not apply to Dr. Thomas and that Dr. Leo stated no standard of
care as to Dr. Thomas.  See Ogletree, 262 S.W.3d at 317–18.    

Dr. Thomas also asserts that Dr. Leo was not
qualified to provide an opinion regarding the standard of care applicable to
Dr. Thomas.  Presuming, without deciding, that this is so, the Ogletree
court held that a report implicated the doctor’s conduct and was a deficient
report, even though the doctor argued that “no report” was served and that the
expert was not qualified to provide an opinion regarding the doctor’s standard
of care.  See Ogletree, 262 S.W.3d at 318–19.  Therefore, under Ogletree,
Dr. Thomas’s argument lacks merit.  See id.

Having determined that Dr. Leo’s report implicated
Dr. Thomas’s conduct and that Dr. Leo’s report was a “deficient report” as to
Dr. Thomas, we conclude that this court lacks jurisdiction over Dr. Thomas’s
appeal.

E.        Appellate
Jurisdiction as to the Physician’s Assistant

All parties agree that Dr. Whiteman’s report does not
refer to physician’s assistant Lambi or her conduct.  The Claimant states in
her appellate brief that Dr. Leo’s report “was designed to address the
negligence of Dr. Lipsen, . . . Dr. Mocharla, . . ., as well as the negligence
of Dr. Thomas and Ms. Lambi.”  But in his report Dr. Leo did not refer to Lambi
or to any physician’s assistant.  Dr. Leo did refer to the following progress
note, which the Claimant asserts was made by Lambi:

On November 17,
2007, a progress note at 0915 hours noted the presence of chest pain with
difficulties taking deep breaths.  Lungs were noted to be clear.  Dr. Thomas
was informed of the shortness of breath, and the note stated that Dr. Thomas
“is to follow.”

We presume for the sake of
argument that Lambi made this progress note.  The Claimant does not assert that
there is any other reference to Lambi in Dr. Leo’s report.

Nurse Beerman presents herself as a nursing expert,
and the Claimant asserts on appeal that Beerman’s report “addresses the
negligence of the nursing staff at Renaissance Hospital.”  However, Beerman
does refer to Lambi by name, making the following references to Lambi in her
report (the “Beerman Report”):

Post-operative day
five, November 17, 2007, Mr. Torrez’s condition worsened.  Mr. Torrez was under
the care of Nurse Tsehay Tekeste in ICU.  At 0915, Sharon Lambi, PA with Dr.
Thomas, noted Mr. Torrez reported he was “doing well, but states he has some
chest pain with difficulties taking deep breaths.”  Ms. Lambi indicated she
discussed Mr. Torrez’s condition with Dr. Thomas and “he is to follow.”  Ms.
Lambi gave orders for potassium replacement.

In the three reports, the only references to Lambi or
her conduct are to a progress note that she made at 9:15 a.m. on November 17,
2007.  In this entry, Lambi noted Ricardo Torrez’s report of his condition, and
stated that she discussed the patient’s condition with Dr. Thomas, who “is to
follow.”  Lambi also gave orders for potassium replacement.  This is all that
is stated regarding Lambi in the three medical reports.  The reports contain no
statement of a standard of care that can possibly be attributed to Lambi. 
Though a brief mention is made of care given by Lambi at one point in time, the
reports contain no criticism of that care or statement that the care should
have been different.  The reports contain no statement that any act or omission
of Lambi breached a standard of care, constituted negligence, or caused any harm
or injury to Ricardo Torrez.  Though in her report, Beerman mentions Lambi’s
name three times, Beerman does so in a passing reference in the “Case Synopsis”
section of her report.  We conclude that the passing references to one instance
of care rendered by Lambi do not implicate the conduct of Lambi.  We base this
conclusion on the lack of any criticism of Lambi’s care, any statement that
Lambi violated any standard of care, and any statement that she caused harm to
Ricardo Torrez.  Indeed, the reports indicate that Lambi communicated to Dr.
Thomas the information that the patient reported regarding his condition.  On
this record, we conclude that, even taking the three reports together, the Claimant
served “no report” as to Lambi.  See Rivenes, 257 S.W.3d at 337–39 (holding
that report did not implicate appellant doctor’s conduct and was “no report” as
to that doctor because the report contained no opinions concerning appellant’s
conduct and the report did not refer to appellant).  

The
Claimant relies on a pre-Badiga case indicating that no appeal can ever
be taken under section 54.014(a)(9) if the trial court grants an extension
under section 74.351(c).  See McKeever v. Cerny, 266 S.W.3d 451, 454–55
(Tex. App.—Corpus Christi 2008, no pet.).  But this case is contrary to Badiga. 
See Badiga, 274 S.W.3d at 683–85.  The Supreme Court of Texas has not
yet addressed when, if ever, a defendant may appeal from an order denying a
motion to dismiss if the trial court granted an extension to a plaintiff who served
a report within the Time Period but the defendant asserted that the report was
“no report” as the appealing defendant.[5] 
See In re Watkins, 279 S.W.3d 633, 633–34 (Tex. 2009); id. at
636–39 (Willett, J., concurring).  Though the high court has not yet addressed
this fact pattern, this court did so in Rivenes, a precedent by which we
are bound.  See Rivenes, 257 S.W.3d. at 338, 340–41.  Therefore, we
cannot follow cases from other courts of appeals contrary to Rivenes.  See,
e.g., Scoresby v. Santillan, 287 S.W.3d 319, 324 (Tex. App.—Fort Worth
2009, pet. granted) (concluding that “no report” category in Badiga only
includes instances in which no document purporting to be a report was served within
the Time Period).  We follow this court’s precedent.

Because the three reports that the Claimant served
are “no report” rather than a deficient report as to Lambi, this court has
appellate jurisdiction over Lambi’s appeal from the trial court’s denial of her
motion to dismiss.  See Badiga, 274 S.W.3d at 683–85; Rivenes,
257 S.W.3d. at 339–41.  Because the three reports are “no report” as to Lambi, the
trial court abused its discretion by denying Lambi’s motion to dismiss under
section 74.351(b).  See Rivenes, 257 S.W.3d. at 339–41.  Accordingly, we
sustain the appellate issue as to Lambi.

III.  Conclusion

As to Dr. Thomas, the Claimant served a deficient
report within the Time Period and therefore there is no appellate jurisdiction
under section 51.014(a)(9).  For this reason, we dismiss Dr. Thomas’s appeal
for lack of jurisdiction.  As to Lambi’s appeal, the three reports that the Claimant
served are “no report” rather than a deficient report.  Therefore, this court
has appellate jurisdiction, and we hold that the trial court abused its
discretion by denying Lambi’s motion to dismiss under section 74.351(b).  Accordingly,
we reverse the trial court’s order as to Lambi, and remand to the trial court
with instructions to dismiss the claims against Lambi and award her reasonable
attorney’s fees and costs of court under section 74.351(b).  

 

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Frost, and Brown.

 

 

 

 









[1] Unless
otherwise stated, all statutory references in this opinion are to the Texas
Civil Practice and Remedies Code.





[2] The
affected parties can extend the date for serving a report by written
agreement.  See Tex. Civ. Prac.
& Rem. Code Ann § 74.351(a) (West 2011).  





[3]In addition,
Nurse Beerman states in her report that Dr. Thomas ordered the first chest
x-ray.





[4] Dr. Thomas
asserts that the Claimant’s counsel conceded at the hearing in the trial court
that the reports fail to provide a standard of care as to Dr. Thomas.  But, we
construe the statement by the Claimant’s counsel as conceding that Dr. Leo’s
report does not expressly mention that a standard of care applies specifically
to Dr. Thomas.  In any event, counsel’s statement does not rise to the level of
a judicial admission.  See Regency Advantage Ltd. P’ship v. Bingo
Idea-Watauga, Inc., 936 S.W.2d 275, 278 (Tex. 1996) (holding that statement
was not clear, deliberate, and unequivocal so as to constitute a judicial
admission).  





[5]  The Supreme Court of Texas may address this issue when it
issues its opinion in Scoresby v. Santillan, which has been submitted in cause number 09-0497 in that
court.