Jan N. OGLETREE, M.D. and Heart Hospital of Austin, Petitioners,

v.

Nancy Kay MATTHEWS and Luann Matthews, Respondents.

No. 06–0502.

Supreme Court of Texas.

Argued April 10, 2007.

Decided Nov. 30, 2007.

Terri S. Harris, Patricia Sue Allen, Ewbank & Byrom, P.C., Richard Charles Geisler, Missy K. Atwood, Maria Cantu Hexsel, Germer Gertz Beaman & Brown, LLP, Austin, TX, for Petitioners.

Charles J. Young, Richey & Young, Austin, TX, Robert T. Hardcastle, Woodland Park, CO, for Respondents.

Chief Justice JEFFERSON delivered the opinion of the Court.

The Civil Practice and Remedies Code requires a health care liability claimant to serve expert reports on providers within 120 days after filing suit. If the claimant does not serve the report within 120 days, the trial court must grant the affected party's motion to dismiss the claim, and the failure to do so is subject to interlocutory appeal. If, however, the claimant's report is timely but deficient, the trial court may grant a single, thirty day extension to cure that deficiency, and the order granting that extension may not be appealed. We must decide whether a defendant may immediately appeal when a trial court both denies a motion to dismiss and grants the claimant a thirty day extension to cure expert reports that, although served timely, are deficient. We conclude that the statute prohibits such an appeal.

## I

### Factual and Procedural Background

Eighty-four-year-old John Burke Matthews was admitted to Heart Hospital of Austin on September 27, 2002. Several days into his hospitalization, Dr. Jan Ogletree, a urologist, performed a urinary catheterization procedure on Mr. Matthews. Dr. Ogletree is alleged to have inserted the catheter negligently, causing Mr. Matthews to suffer traumatic bruising, bladder perforation, and acute renal failure. Mr. Matthews died on October 7, 2002.

Plaintiffs Nancy Kay Matthews and Luann Matthews brought a health care liability claim against Dr. Ogletree and Heart Hospital of Austin complaining of Mr. Matthews's medical care. Pursuant to Texas Civil Practice and Remedies Code section 74.351, the plaintiffs timely filed expert reports from: (1) Dr. Richard Karsh, a radiologist; (2) nurse Alexandria Burwell; and (3) nurses Marilyn Bignell and Walli Carranza. TEX. CIV. PRAC. & REM.CODE § 74.351(a). Dr. Karsh's report was directed solely to Dr. Ogletree's care (although it did not mention him by name). Dr. Karsh noted that Mr. Matthews's x-rays showed "major extravasation of contrast, almost certainly representing a very significant bladder perforation.... [I]t is not even certain (from an x-ray standpoint) that the Foley catheter is in the bladder." He continued:

In my opinion (but I would have to defer to a urologist on this) given the inability of the nursing staff to pass the Foley catheter into the bladder and the necessity for the urologist to utilize a stiff metallic "wire" to traverse the urethra, such manipulation and catheterization should have been performed under fluoroscopic guidance. Had that been done the perforation might well have been avoided but certainly could have diagnosed [sic] at the outset, with the likelihood of a smaller tear having resulted. If not recognized in a timely manner, such a tear could lead to long-term problems, including bladder (or, if a urethral tear, urethral) dysfunction, infection, etc. It is apparent that a cystogram was performed shortly after the catheterization, although the exact timetable is unclear; nor do I have records to determine whether or not the response of the physician to the tear was appropriate. (Of course, those might be best reviewed by a urologist.)

The nurses' reports were directed primarily to the care provided by the nursing staff at the hospital, although they outlined various alleged failures by Dr. Ogletree to adhere to the standard of care as well.

Dr. Ogletree timely objected to the sufficiency of the expert reports and moved to dismiss the case. Dr. Ogletree asserted that a radiologist was incapable of opining on a urologist's standard of care and that no curriculum vitae was attached to the expert report as the statute requires. Tex. Civ. Prac. & Rem.Code § 74.351(a). Dr. Ogletree also complained that the nurses' reports did not satisfy chapter 74's requirement that an expert testifying against a physician must be "practicing medicine," *id.* § 74.401(a)(1), something nurses may not do, Tex. Occ.Code § 301.002(2).

The hospital did not object to the reports within the statutory twenty-one day period, but moved to dismiss nonetheless. Tex. Civ. Prac. & Rem.Code § 74.351(a). The hospital contended that because the nurses' reports lacked a physician's opinion on causation, they were, as expert reports, not merely deficient, but nonexistent. Because its motion to dismiss was based on the "nonexistence" of an expert report, rather than a complaint about the report's sufficiency, the hospital contends that no objection was required.

The trial court found that the radiologist's report was deficient, denied Dr. Ogletree's motion to dismiss, and granted the plaintiffs a thirty day extension to cure deficiencies. *See* Tex. Civ. Prac. & Rem. Code § 74.351(c). The court also denied the hospital's motion, finding that the nurses' reports implicated the hospital's conduct and that the hospital's failure to timely object to the reports' sufficiency within twenty-one days waived any objection. Dr. Ogletree and the hospital brought an interlocutory appeal of the trial court's order. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(9).

■ The court of appeals held that it lacked jurisdiction over Dr. Ogletree's appeal because the trial court's denial of his motion to dismiss was coupled with the grant of an extension to cure the deficient reports. 212 S.W.3d 331, 334–335. The court reasoned that Dr. Ogletree could not sever the denial of the motion to dismiss from the grant of the extension and concluded that permitting an appeal to the denial would negate the statutory language prohibiting an appeal from an order granting an extension. *Id.* As to the hospital, the court of appeals held that the hospital waived its objections to any deficiencies in the report and affirmed the trial court's order denying the motion to dismiss. *Id.* at 336. We granted the petitions for re-

view.[1]  50 Tex. Sup.Ct. J. 447 (Feb. 26, 2007).

## II

### Discussion

In 2003, the Legislature amended the statutes governing health care liability claims. Act of June 2, 2003, 78th Leg., R.S. ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 864. As amended, Texas Civil Practice and Remedies Code section 74.351 provides that, within 120 days of suit, a plaintiff must serve expert reports for each physician or health care provider against whom a liability claim is asserted. TEX. CIV. PRAC. & REM.CODE § 74.351(a). These reports must identify the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6). If a plaintiff does not serve a timely report, a trial court "shall" grant the defendant's motion to dismiss the case with prejudice. An order that denies all or part of the relief sought in such a motion may be immediately appealed. TEX. CIV. PRAC. & REM.CODE §§ 51.014(a)(9) (authorizing interlocutory appeal from order that "denies all or part of the relief sought by a motion under Section 74.351(b)"), 74.351(b). But if a report is served, "[e]ach defendant physician or health care provider whose conduct is implicated ... must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." *Id.* § 74.351(a). Finally, "[i]f an

expert report has not been served within [120 days] because elements of the report are found deficient, the court may grant one 30–day extension to the claimant in order to cure the deficiency," *id.* § 74.351(c), and that decision may not be appealed, *id.* § 51.014(a)(9) ("an appeal may not be taken from an order granting an extension under Section 74.351").

## A

### Deficient Reports

Dr. Ogletree argues that as a radiologist, Dr. Karsh may not opine on a urologist's standard of care and, therefore, no report was served that met the statutory definition of an "expert report." *See* TEX. CIV. PRAC. & REM.CODE § 74.401. Because no "report" was served, he contends the trial court had no discretion to grant a thirty day extension, and that its denial of the motion to dismiss should therefore be immediately appealable.

That is not how the Legislature drafted the statute, however. As the court of appeals noted, the predecessor statute allowed a discretionary thirty day extension for good cause and a mandatory thirty day "grace period" upon a showing that the failure to file a conforming report was due to accident or mistake and was not intentional or due to conscious indifference. 212 S.W.3d at 333 n. 4 (citing former TEX. REV.CIV. STAT. art. 4590i, § 13.01). The 2003 amendments, on the other hand, created a statute-of-limitations-type deadline within which expert reports must be served. If no report is served within the 120 day deadline provided by 74.3 51(a), the Legislature denied trial courts the dis-

1. Texas appellate courts have jurisdiction only over final orders or judgments unless a statute permits an interlocutory appeal. *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992). Here, the court of appeals con-

cluded it lacked jurisdiction over Dr. Ogletree's appeal, and we have jurisdiction to determine whether that conclusion was correct. *Tex. Dep't of Criminal Justice v. Simons,* 140 S.W.3d 338, 343 (Tex.2004).

cretion to deny motions to dismiss or grant extensions, and a trial court's refusal to dismiss may be immediately appealed. TEX. CIV. PRAC. & REM.CODE § 74.351(b) (stating that a trial court "shall" dismiss a claim when expert reports are not served within 120 days); TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9) (authorizing interlocutory appeal of the denial of a motion to dismiss filed under 74.351(b)). This strict 120 day deadline can lead to seemingly harsh results. *See, e.g., Thoyakulathu v. Brennan,* 192 S.W.3d 849, 856 (Tex.App.-Texarkana 2006, no pet.) (holding that expert report had not been served when plaintiff filed the report but failed to serve it on the doctor due to facsimile error); *Garcia v. Marichalar,* 185 S.W.3d 70, 73 (Tex.App.-San Antonio 2005, no pet.) (finding that plaintiff's expert report that mentioned other providers but not Garcia was in effect no report as to Garcia and concluding that an extension was, therefore, improper). Nonetheless, the Legislature imposed the deadline as part of its effort to "reduce excessive frequency ... of health care liability claims." Act of June 2, 2003, 78th Leg., R. S., ch. 204,

§ 10.11(b)(3), 2003 Tex. Gen. Laws 847, 884.

But while the 2003 amendments were intended to decrease claims, they do not mandate dismissal for deficient, but curable, reports. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(c)(stating that "[i]f an expert report has not been served within [120 days] because elements of the report are found deficient, the court may grant one 30–day extension to the claimant in order to cure the deficiency"); Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(b)(1), (3), 2003 Tex. Gen. Laws 847, 884 (amendment's goal was to reduce claims but to "do so in a manner that will not unduly restrict a claimant's rights any more than necessary to deal with the crisis"). Indeed, the Legislature recognized that not all initial timely served reports would satisfy each of the statutory criteria. As a result, the amendments explicitly give trial courts discretion to grant a thirty day extension so that parties may, where possible, cure deficient reports. TEX. CIV. PRAC. & REM.CODE § 74.351(c). In this important respect, a deficient report differs from an absent report.[2] Thus, even when a report

---

**2.** We recognize that section 74.351's language is somewhat confusing, as the statute uses the phrase "has not been served" to refer both to deficient and absent reports. *Compare* § 74.351(b) (trial court shall dismiss if expert report "has not been served") *with* 74.351(c) (if report "has not been served ... because elements of the reports are found deficient," trial court may grant extension). Several courts of appeals have held that the statute permits interlocutory appeals of denied motions to dismiss coupled with extension grants when there is an absence of a report, rather than a report that implicated a provider's conduct but was somehow deficient. *See Packard v. Miller,* 2007 WL 1662279, *2 (Tex. App.-Amarillo 2007, no pet. h) (finding jurisdiction and holding that the trial court abused its discretion in granting an extension when no report was filed); *Valley Baptist Med. Ctr. v. Azua,* 198 S.W.3d 810, 815 (Tex.App.-Corpus Christi 2006, no pet.) (holding same);

*Soberon v. Robinson* 2006 WL 1781623, *3 (Tex.App.-Beaumont 2006, pet. denied) (holding same); *Emeritus Corp. v. Highsmith,* 211 S.W.3d 321, 324–325 (Tex.App.-San Antonio 2006, pet. denied) (finding that denying interlocutory appeal of a motion to dismiss when no report is served would thwart the legislative intent to allow interlocutory appeal of an order denying a motion to dismiss); *Thoyakulathu v. Brennan,* 192 S.W.3d 849, 851 n. 2 (Tex.App.-Texarkana 2006, no pet.) (severing the extension from the motion to dismiss and limiting review to the trial court's order denying the doctor's motion to dismiss). At least one court of appeals has concluded that, notwithstanding the absence of a timely served report, it lacked jurisdiction over the provider's interlocutory appeal. *Badiga v. Lopez,* 2005 WL 1572273 (Tex.App.-Corpus Christi 2005, pet. filed) (holding that section 51.014(a)(9) does not permit an interlocutory appeal when a thirty day extension is grant-

is deemed not served because it is deficient, the trial court retains discretion to grant a thirty day extension, and the Legislature explicitly stated that such orders are not appealable. TEX. CIV. PRAC. & REM. CODE §§ 74.351(c); 51.014(a)(9); *see also In re Woman's Hosp. of Texas, Inc.,* 141 S.W.3d 144, 149 (Tex.2004) (Owen, J., concurring in part and dissenting in part to denial of mandamus) (noting that the 2003 amendments made it "plausible, even likely ... that the Legislature intended to *narrow* existing law in order to eliminate interlocutory review when a trial court granted a 30–day extension").

This prohibition is both logical and practical. If Dr. Ogletree's position were correct, a defendant would be entitled to immediately appeal a trial court's order denying dismissal any time a report failed to meet strict statutory guidelines, even though the statute permits a plaintiff to cure defects of that nature. We decline to read section 74.351 so narrowly. If a defendant could immediately (and prematurely) appeal, the court of appeals would address the report's sufficiency while its deficiencies were presumably being cured at the trial court level, an illogical and wasteful result. Moreover, because the Legislature authorized a single, thirty day extension for deficient reports, health care providers face only a minimal delay before a report's sufficiency may again be challenged and the case dismissed, if warranted.

■ Thus, if a deficient report is served and the trial court grants a thirty day extension, that decision—even if coupled with a denial of a motion to dismiss—is not subject to appellate review. That is precisely the situation we face here. Dr. Ogletree urges that the trial court's denial

of his motion to dismiss and the order granting an extension are severable and that he is appealing only the denial of his motion to dismiss. We disagree.

■ Like the court of appeals, we conclude that, when a report has been served, the actions denying the motion to dismiss and granting an extension are inseparable. 212 S.W.3d at 334. The statute plainly prohibits interlocutory appeals of orders granting extensions, and if a defendant could separate an order granting an extension from an order denying the motion to dismiss when a report has been served, section 51.014(a)(9)'s ban on interlocutory appeals for extensions would be meaningless. We do not think the Legislature contemplated severing the order denying the motion to dismiss from the order granting the extension when it expressly provided that orders granting extensions were not appealable on an interlocutory basis.

Because a report that implicated Dr. Ogletree's conduct was served and the trial court granted an extension, the court of appeals could not reach the merits of the motion to dismiss. We conclude that the court of appeals correctly determined it lacked jurisdiction over Dr. Ogletree's appeal.

**B**

**Waiver of Objections**

■ Under section 74.351(a), "[e]ach defendant physician or health care provider whose conduct is implicated in a report must file and serve *any* objection to the sufficiency of the report not later than the

---

ed). That situation is not before us, however, and we express no opinion on the propriety of those holdings.

21st day after the date it was served, *failing which all objections are waived.*" TEX. CIV. PRAC. & REM.CODE § 74.351(a) (emphasis added). The hospital admits that it did not object to the report within the twenty-one days allowed by statute but claims it had no duty to do so because, in effect, no report had been served due to the absence of a physician's opinion on causation. *See* TEX. CIV. PRAC. & REM.CODE § 74.351(r)(6).

But the nurses' reports served on Heart Hospital are directed explicitly to the hospital and clearly implicate its conduct. Both parties now agree that the nurses' reports were sufficient as to the standard of care and breach of that standard at the hospital. And as the court of appeals noted, the hospital's motion to dismiss contested the sufficiency of those reports—the motion claimed that the reports did not explain: 1. the applicable standard of care; 2. how the hospital breached the standard of care; 3. how any breach harmed Mr. Matthews; and 4. that the nurses were not qualified to render an opinion as to causation under the statute. These objections are directed to the reports' sufficiency, and they could have been urged within the statutory twenty-one day period, as the statute clearly requires. TEX. CIV. PRAC. & REM.CODE § 74.351(a) (requiring each health care provider whose conduct is implicated in a report to serve "*any* objection to the sufficiency of the report not later than the 21st day after the date it was served, *failing which all objections are waived*") (emphasis added). Because the hospital did not object within the twenty-one day period, its objections were waived, and the trial court correctly denied its motion to dismiss.

## III

## Conclusion

No interlocutory appeal is permitted when a served expert report is found deficient and an extension of time granted. We agree with the court of appeals' conclusion that a denial of a motion to dismiss cannot be severed from the grant of an extension when a deficient report has been served, and the court of appeals correctly determined that it lacked jurisdiction over Dr. Ogletree's appeal. We also agree with the court of appeals' determination that Heart Hospital waived its objections to the plaintiffs' expert reports. We affirm the court of appeals' judgment. TEX.R.APP. P. 60.2(a).

Justice WILLETT filed a concurring opinion.

Justice WILLETT, concurring.

I agree with the Court's reasoning and result and write separately only to make this minor observation: the Court's classification of all purported expert reports as either absent or deficient may prove inapposite in rare cases—where the claimed "report" is actually no such thing—and inadvertently expand the availability of the thirty-day extension provided by section 74.351(c) beyond what the Legislature intended.

Section 74.351(a) requires a health care liability claimant to serve an expert report on all defendants within 120 days of filing suit.[1] To qualify as an expert report, the report must summarize the expert's opinion regarding three statutorily required elements: standard of care, breach, and causation.[2] As the Court correctly notes, failure to timely file *any* report warrants dismissal on defendant's motion.[3] If the trial court refuses to dismiss, the defendant is entitled to an immediate appeal.[4]

---

1. TEX. CIV. PRAC. & REM.CODE § 74.351(a).

2. § 74.351(r)(6).

3. § 74.351(b).

The Court also correctly points out that the Legislature provided a safety outlet for plaintiffs who file a deficient expert report. In those instances, the trial court has discretion to grant the claimant one thirty-day extension "in order to cure the deficiency,"[5] and this discretionary decision is not reviewable by interlocutory appeal.[6]

The Court today correctly disposes of the arguments presented by Ogletree and the Hospital. The expert reports filed by the Matthews, consistent with the statutory requirements, contained written opinions by medical professionals discussing the standard of care, breach, and causation applicable to the facts of the lawsuit. The Matthews' alleged miscue, designating the wrong type of medical professionals to opine on standard of care, is the type of defect for which a trial court may grant a discretionary section 74.351(c) extension.

Nevertheless, in discussing the statutory framework, the Court limits the universe of possible reports to two (and only two) types: absent reports, which have not been filed at all and require dismissal of the case, and deficient reports, which have been timely filed and may receive an extension. In my view, there exists a third, albeit rare, category: a document so utterly lacking that, no matter how charitably viewed, it simply cannot be deemed an "expert report" at all, even a deficient one. A document like this merits dismissal just like an absent report.

The Court recognizes that "a deficient report differs from an absent report."[7] I agree but contend that some material does not even rise to the level of a deficient report because it fails to address the statutorily mandated elements set forth in Chapter 74. Such documents constitute no expert report at all. In fact, I hesitate even to label such material a "*grossly* deficient report" because that description may well confer more credit than the "report" claims for itself. It may not purport to be a report at all, and its author may never have intended it as such. For example, it may (by its own terms) be provider correspondence or perhaps "medical or hospital records or other documents"[8] or other health-related paperwork that, while related to the patient's care and condition, neglects altogether to address the rudimentary elements of an expert report; indeed, it may never and nowhere accuse anyone of doing anything wrong. Such information certainly constitutes discoverable and highly relevant information in a lawsuit,[9] but any claimant passing off such material as an expert report, and any court treating it as such, evinces a complete disregard for Chapter 74's unambiguous statutory criteria. To be clear, I am not describing a situation where "elements of the report have been found deficient,"[10] thus making the report eligible for an opportunity to cure; rather, I am describing a situation where elements of the report have not been found at all—where the plaintiff submits nothing but doctor- or provider-signed material that contains zero (or practically zero) discussion of what makes a report a report. Elements must be present to be labeled deficient; if they are nonexistent, so is the report.

4.  § 51.014(a)(9).

5.  § 74.351(c).

6.  § 51.014(a)(9).

7.  212 S.W.3d 331.

8.  § 74.351(s).

9.  *Id.*

10.  § 74.351(c).

It is indisputable, for example, that a "report" signed by a plumber is no report at all and merits swift dismissal, no matter how brilliantly he describes how the defendant's departure from accepted standards of care caused the patient's injury. Likewise, a doctor– or provider-signed record that totally omits the required statutory elements and makes no colorable attempt to demonstrate liability is no report at all and merits dismissal just as swift. A "report" of this nature falls outside the section 74.351(c) safe harbor afforded to deficient-but-curable reports. A trial court reviewing such material should conclude that a report "has not been served" for purposes of section 74.351(b) and dismiss the claim as the statute directs; failure to do so invites an interlocutory appeal and reversal under section 51.014(a)(9).

I am confident that the overwhelming majority of health care liability claimants do their best to submit expert reports that comply with Chapter 74. A grossly substandard filing pitched as a bona fide report may indeed be a rare bird in Texas legal practice, but courts should be mindful of its existence.