Affirmed and Opinion filed July 12,
2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00544-CV



Regina Fay
Lucas, Individually and as Executrix of the Estate of Sclina Fay Flowers, Deceased,
Archie Mack Flowers, Renee Harkey, Delilah Arolfo, Archie Earl Flowers and
Bessie Baughman, Appellants 

v.

Clearlake
Senior Living Limited Partnership d/b/a Rosemont at Clear Lake Senior Living
Community, Appellee 



On Appeal from
the 190th District Court

Harris County, Texas

Trial Court
Cause No. 2009-05179



 

OPINION

Appellants Regina Fay Lucas, individually and as
executrix of the estate of Sclina Fay Flowers, deceased, Archie Mack Flowers,
Renee Harkley, Delilah Arolfo, Archie Earl Flowers, and Bessie Baughman
(collectively “Lucas”) appeal from the trial court’s order granting the motion
of appellee, Clearlake Senior Living Limited Partnership d/b/a Rosemont at
Clear Lake Senior Living Community (“Rosemont”), to dismiss appellants’ health
care liability claim.  Lucas contends that the trial court abused its
discretion in granting Rosemont’s amended motion to dismiss because the only objections
upon which the court could base its ruling were either waived or withdrawn.  We
affirm.

I.                  
Factual and Procedural Background

                On
February 28, 2008, while a resident at Rosemont, an assisted-living facility,
eighty year old Sclina Fay Flowers died.  On January 28, 2009, Lucas filed a
health care liability lawsuit against Rosemont alleging that, while in Rosemont’s
care, Ms. Flowers was attacked by ants on January 29 and 30, 2007, and that
following the second attack, she collapsed to the floor and sustained injuries
that later resulted in her death.  Rosemont filed its answer on February 25,
2009.

            Pursuant
to a written agreement, the parties agreed to extend the deadline for Lucas to
serve her expert report[1]
until January 14, 2010.[2] 
On January 13, 2010, Lucas served Rosemont with the expert report of Robbie L.
Murphy, R.N., B.S.N.

            On
January 26, 2010, Rosemont filed a motion to dismiss asserting that Murphy’s
report failed to comply with the substantive requirements of section 74.351 of
the Texas Civil Practice and Remedies Code.  Specifically, Rosemont objected to
the report on the grounds that it failed to (1) explain how Rosemont allegedly
breached the applicable standards of care; (2) state the causal relationship
between Rosemont’s breach and Ms. Flowers’s injuries and subsequent death; and
(3) include Murphy’s curriculum vitae.  On January 28, 2010, Lucas filed and
served Rosemont with Murphy’s curriculum vitae.

            On
February 22, 2010, Lucas filed her response to Rosemont’s motion to dismiss. 
In her response, Lucas argued that (1) Murphy’s report sufficiently addressed
Rosemont’s breach of the applicable standards of care and the causal
relationship between the breach and Ms. Flowers’s injuries and death; (2) her
failure to attach Murphy’s curriculum vitae  to the expert report was not fatal
because (a) the trial court could grant a thirty-day extension to Lucas to
correct the deficiency and (b) Murphy’s qualifications were set out in her
expert report; and (3) Rosemont waived any objection to Murphy’s qualifications
to testify regarding causation by failing to object within twenty-one days of
service.  On March 1, 2010, the trial court issued an order granting Lucas
thirty days from the date of the order to cure the deficiencies addressed in
Rosemont’s motion to dismiss.

            On
March 30, 2010, Lucas served Rosemont with Murphy’s amended expert report.  On
April 9, 2010, Rosemont filed its amended motion to dismiss in which it argued
that Murphy, as a nurse, was not qualified to render an opinion regarding
causation.  On April 21, 2010, Rosemont filed a motion to limit expert
testimony in which it requested that the court exclude Murphy’s testimony
regarding the causal relationship between Rosemont’s alleged breach and Ms.
Flowers’s injuries and death on the basis that Murphy was not qualified to
render an expert opinion on causation.  

            On
April 26, 2010, Lucas filed her response to Rosemont’s amended motion to
dismiss.  In her response, she contended that (1) Rosemont had waived any
objection to Murphy’s qualifications by failing to object within twenty-one
days of being served with Murphy’s original report and curriculum vitae and (2)
Rosemont had withdrawn and, thus, waived its objection to the sufficiency of
Murphy’s opinions regarding breach and causation raised in its original motion
to dismiss because it omitted the objections in its amended motion to dismiss. 
That same day, the court held a hearing on Rosemont’s amended motion to
dismiss.  At the conclusion of the hearing, the court ordered the parties to
submit additional briefing specifically addressing Lucas’s argument that
Rosemont had waived its objection to Murphy’s qualifications.

            On
April 28, 2010, Rosemont filed its reply to Lucas’s response to its amended
motion to dismiss.  In its reply, Rosemont argued that it had not waived its
objection to Murphy’s qualifications by failing to object within twenty-one
days following service of Murphy’s original report because Murphy did not include
an opinion regarding causation in her original report.  Instead, Rosemont
argued, Murphy attempted to offer an opinion regarding causation only in her
amended report, and Rosemont had timely objected to the “new” testimony.  On
April 30, 2010, Lucas filed a sur-reply.  On May 13, 2010, the trial court
granted Rosemont’s amended motion to dismiss.  This appeal followed.

II.              
Standard of Review

                We
review a trial court’s decision on a motion to dismiss a health care liability
claim under the expert report provisions of chapter 74 of the Texas Civil
Practice and Remedies Code for an abuse of discretion.  See Kelly v. Rendon,
255 S.W.3d 665, 671–672 (Tex. App.—Houston [14th Dist.] 2008, no pet).  To
determine whether a trial court abused its discretion, we must decide whether
the trial court acted without reference to any guiding rules or principles; in
other words, we must decide whether the act was arbitrary or unreasonable.  Cire
v. Cummings, 134 S.W.3d 835, 838–39 (Tex. 2004).  An appellate court cannot
conclude that a trial court abused its discretion merely because the appellate
court would have ruled differently in the same circumstances.  See Bowie
Mem’l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002).

III.           
Analysis

A.    Expert
Report Requirements

            Under
Chapter 74’s provisions, a health care liability claimant must serve an expert
report on each defendant no later than the 120th day after the claim is filed. 
See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West Supp. 2011). 
“These reports must identify the ‘applicable standards of care, the manner in
which the care rendered by the physician or health care provider failed to meet
the standards, and the causal relationship between that failure and the injury,
harm, or damages claimed.’”  Ogletree v. Matthews, 262 S.W.3d 316, 319
(Tex. 2007) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 74.351r(6)).  In
deciding whether the statutory standard has been met, the trial court examines
only the four corners of the expert’s report and curriculum vitae.  Kelly,
255 S.W.3d at 672.

If a report is served, “[e]ach defendant physician or
health care provider whose conduct is implicated … must file and serve any
objection to the sufficiency of the report not later than the 21st day after
the date it was served, failing which all objections are waived.”  Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(a).  “If an expert report has not been
served within [120 days] because elements of the report are found deficient,
the court may grant one 30-day extension to the claimant in order to cure the
deficiency.”  Id. § 74.351(c) (West 2011); Ogletree, 262 S.W.3d
at 319.  If the trial court determines that the report does not represent a
good faith effort to comply with the definition of an expert report, then the
trial court must grant a motion to dismiss challenging the adequacy of the
report.  See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l) (West
2011); Kelly, 255 S.W.3d at 672.

B.     Waiver

            In
three related issues, Lucas contends that the trial court abused its discretion
in granting Rosemont’s amended motion to dismiss because the only objections
upon which the court could base its ruling were either waived or withdrawn.[3]  We address
each of Lucas’s arguments below.

1.      Rosemont’s
Objections to Murphy’s Qualifications

            In
her first issue, Lucas contends that Rosemont waived any objection to Murphy’s qualifications
to testify regarding causation by failing to object within twenty-one days of
being served with Murphy’s original expert report.  Rosemont argues that it had
no duty to object to Murphy’s qualifications until it was served with Murphy’s
amended expert report.  According to Rosemont, Murphy did not opine regarding
causation in her original report and, thus, her testimony regarding causation
in her amended report constituted “new” testimony to which Rosemont timely
objected in its amended motion to dismiss.[4]

            In
her original expert report, Murphy opined, in relevant part, as follows:

It is this reviewer’s opinion that Ms. Flowers’ condition
was not consistently monitored in a prudent and appropriate manner.  Nursing
documentation did not reveal that adequate/accurate nursing assessments had
been performed.

In this reviewer’s opinion, and again more likely than not,
Ms. Flowers would have not suffered the discomfort, the ant bites, nor the fall
had the staff of this facility performed their professional responsibilities in
a prudent manner through proper, timely assessments and interventions.

. . . .

[P]roper intervention and support could have been initiated
that more likely than not, would have prevented her fall; further these
interventions would have prevented Ms. Flowers from exhibiting and suffering an
overall decline in condition.

. . . . 

The staffs’ [sic] inactions had a direct impact on Ms.
Flowers’ decline in condition (emphasis added).

. . . . 

It is my professional opinion that the staff of the
Rosemont of Clear Lake failed to assess and document Ms. Flowers’ condition. 
Failure of the staff to carefully and prudently follow up on Ms. Flowers’
continued complaints of nervousness, anxiety, pain and overall generalized
weakness and discomfort, as well as their failure to implement nursing
interventions and failure of the facility to follow and adhere to the rules and
regulations mentioned in the Nurse Practice Act allowed this patient to
suffer the consequences of the staff’s inactions (emphasis added).

In
its original motion to dismiss, Rosemont argued that 

[n]othing in Murphy’s conclusion explains what she
means by the “consequences of the staff’s inactions.”  The language in the
report lacks sufficient detail to satisfy the requirements of Chapter
74.  Costello v. Christus, 141 S.W.3d 245, 249 (Tex. App.—San Antonio
2004, no pet.) (agreeing with the trial court that a report was inadequate as
to causation when report failed to explain how the breach caused the injury
alleged and noting that inferences were not permitted).  Despite the
requirements of Chapter 74, Plaintiffs’ expert report to Rosemont at Clearlake lacks
an explanation of the purported link between the standard of care, its
alleged breach and the ensuing injury (emphasis added).

            As
demonstrated above, in its motion to dismiss, Rosemont challenged the
sufficiency of Murphy’s opinion regarding the causal relationship between
Rosemont’s alleged breach of the applicable standards of care and Ms. Flowers’s
injuries and death.[5] 
Contrary to Rosemont’s assertion, Murphy rendered an opinion regarding causation
in her original report—albeit one that the trial court found deficient—and,
thus, her testimony regarding causation in her amended report does not
constitute “new” testimony.[6]  


Rosemont also argues that Murphy’s amended expert
report supplanted her original report and, therefore, its duty to object to
Murphy’s qualifications to testify regarding causation was not triggered until
her amended report was served.  In support of its position, Rosemont relies on HealthSouth
Corp. v. Searcy, 228 S.W.3d 907 (Tex. App.—Dallas 2007, pet. denied) and Otero
v. Leon, 319 S.W.3d 195 (Tex. App.—Corpus Christi 2010, pet. denied).  

In Searcy, the plaintiff filed a nurse’s and a
doctor’s expert reports and curriculum vitae to which the defendants filed
objections and a motion to dismiss.  See Searcy, 228 S.W.3d at 908.  The
plaintiff then filed amended reports and curriculum vitae, and the defendants
again filed objections and a motion to dismiss.  See id.  The plaintiff
subsequently filed the doctor’s second amended expert report and a response to
the defendants’ objections and motion to dismiss, after which the trial court
denied defendants’ objections and motion.  See id.  On appeal,
defendants complained about the trial judge’s order overruling their objection
to the first amended expert reports.  See id.  Noting that an amended
filing supplants the previously filed documents, the appeals court concluded
that the defendants’ failure to object to, or move to strike, the doctor’s second
amended expert report precluded appellate review.  See id. at 909.

In Otero, the court addressed a situation in which
multiple defendants objected to two doctors’ initial expert reports filed by
the plaintiff, but only one of the three defendants filed objections to one
doctor’s amended expert report and a second motion to dismiss.  See Otero,
319 S.W.3d at 198.  The court found that the failure of the other two
defendants to object to the doctor’s amended expert report within twenty-one
days of service waived any objection regarding the adequacy of the amended
report.  See id. at 205.

Rosemont’s reliance on Searcy and Otero
is misplaced.  While it is true that Murphy filed an amended expert report
after the trial court granted Lucas a thirty-day extension to cure the
deficiencies in the original report, this fact did not absolve Rosemont of the
duty to “file and serve any objection to the sufficiency of [Murphy’s
original] report not later than the 21st day after the day it was served . . .
.”  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (emphasis added).  To
conclude otherwise would mean that a health care liability defendant could avoid
the consequences of its failure to timely object to the adequacy of an expert’s
opinion in each instance where the expert files an amended report.  Rosemont’s
argument is contrary to the clear language of the statute.  See id. § 74.351(a)
(“Each defendant physician or health care provider whose conduct is implicated
in a report must file and serve any objection to the sufficiency of the
report not later than the 21st day after the day it was served, failing which
all objections are waived.”).

Rosemont’s objection that Murphy is not qualified to
render an opinion regarding causation because she is not a licensed physician
is an objection to the sufficiency of Murphy’s report.  See Ogletree,
262 S.W.3d at 322.  Rosemont was therefore required to object on this basis within
twenty-one days of being served with Murphy’s original report.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(a).[7] 
Having failed to do so, Rosemont waived its objection and was not entitled to
dismissal of Lucas’s claim on this ground.  See Ogletree, 262 S.W.3d at
322 (finding that hospital’s failure to object within twenty-one day statutory
period to expert report on sufficiency grounds, including that nurses were not
qualified to render opinion as to causation, waived objections). 

2.      Rosemont’s
Objections to the Sufficiency of Murphy’s Opinions

            In
her second issue, Lucas contends that Rosemont waived any objections to the
substantive sufficiency of Murphy’s opinions regarding the elements of breach
and causation.  Lucas argues that although Rosemont objected to Murphy’s
opinions regarding these elements in its original motion to dismiss, it omitted
the objections in its amended motion to dismiss and, in doing so, waived them.

            Under
the “Argument and Authority” section in its original motion to dismiss, Rosemont
asserted that Murphy’s original expert report failed to comply with Chapter
74’s substantive requirements because it did not (1) explain how Rosemont breached
the applicable standards of care or (2) state the causal relationship between its
alleged breach and Ms. Flowers’s ensuing injuries and death.  Under the
“Argument and Authority” section in its amended motion to dismiss, Rosemont
argued that Murphy’s amended expert report failed to meet the statutory requirements
because Murphy is a nurse and, therefore, not qualified as an expert to render an
opinion regarding causation.  Lucas argues that Rosemont withdrew its
objections to the sufficiency of Murphy’s opinions regarding breach and
causation by omitting them in its amended motion.  We disagree.

Under
the “Background” section in its amended motion, Rosemont stated as follows:

Plaintiffs produced the report of Robbie L. Murphy, R.N.C.,
B.S.N. on January 13, 2010. . . .  Although the report was timely[], it failed
to comply with Chapter 74’s substantive requirements.  Consequently, Rosemont
at Clearlake filed a Motion to Dismiss and at the hearing on Rosemont at
Clearlake’s Motion, this Court ordered that Plaintiffs had until March 31, 2010
to cure the deficiencies sited [sic] by Rosemont at Clearlake in its Motion to
Dismiss. . . . Plaintiffs served an Amended Expert Report of Nurse Murphy on
March 30, 2010; however, Plaintiffs have failed to cure the deficiencies as required
by this Court’s Order (emphasis added).

In its conclusion, Rosemont stated

Plaintiffs have failed to produce an expert report by a
qualified expert as required under Tex. Civ. Prac. and Rem. Code Chapter 74 that
states the causal relationship between the purported failure of the standard of
care of Rosemont of Clearlake with regard to the ant bites, Ms. Flowers’
subsequent fall and Ms. Flowers’ death almost a year later.  The absence of
such an opinion constitutes a fatal defect in the statutorily required expert
opinion; therefore, this case should be dismissed (emphasis added).

            Although
Rosemont does not present its objections to the substantive sufficiency of
Murphy’s opinions regarding the elements of breach and causation in the same
manner as it did in its original motion, we conclude, based on the excerpts
above, that Rosemont did not withdraw those objections in its amended motion to
dismiss.  Because the trial court’s decision to grant Rosemont’s motion can be
affirmed on this basis, we hold that the trial court did not abuse its
discretion by granting Rosemont’s amended motion to dismiss.  We overrule
issues one through three.

IV.            
Conclusion

            We affirm the judgment of the trial
court.

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

Panel consists of Chief Justice Hedges
and Justices Seymore and Boyce.









[1]
Section 74.351 of the Texas Civil Practice and Remedies Code requires a health
care liability claimant to serve one or more expert reports on each defendant
no later than 120 days after the original petition is filed, or later by
written agreement between the parties.  See Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(a) (West 2011).





[2]
During the time period relevant to this case, Rosemont was a receivership
entity in bankruptcy proceedings in The United States Bankruptcy Court for the
District of Oregon.  On April 27, 2009, Rosemont filed a motion to stay the
state proceedings based on the automatic stay provisions of the federal
bankruptcy code.  On August 5, 2009, Lucas filed a motion to obtain relief from
the automatic stay.  On December 15, 2009, the bankruptcy court entered an
order granting Lucas relief from the stay.





[3]
We note that Lucas’s issues limit our inquiry to whether Rosemont’s objections
to Murphy’s expert report have been waived, not whether the objections would
have been otherwise valid.       





            [4] In its amended
motion to dismiss, Rosemont objected that Murphy was not qualified to testify
regarding causation because she is not a licensed physician.  Section 74.403(a)
provides, in relevant part, as follows: “[I]n a suit involving a health care
liability claim against a physician or health care provider, a person may
qualify as an expert witness on the issue of the causal relationship between
the alleged departure from accepted standards of care and the injury, harm, or
damages claimed only if the person is a physician and is otherwise qualified to
render opinions on that causal relationship under the Texas Rules of
Evidence.”  Tex. Civ. Prac. & Rem. Code Ann. 74.403(a) (West 2011).

  





[5]
In its motion to dismiss, Rosemont cites Costello v. Christus Santa Rosa
Health Care Corp., 141 S.W.3d 245 (Tex. App.—San Antonio 2004, no pet.), in
support of its argument that the language in Murphy’s report lacks sufficient
detail to satisfy the requirements of Chapter 74.  In Costello, the
appeals court agreed with the lower court that the expert’s report was
inadequate as to causation because it failed to explain how the alleged breach
caused the injury.  See id. at 249.  Here, as in Costello,
Rosemont’s motion to dismiss contested the adequacy of Murphy’s report regarding
causation.





[6]
In its brief, Rosemont quotes portions of Murphy’s amended expert report and
concludes that “Nurse Murphy’s Amended Expert Report includes causation
language for the first time and, therefore, constitutes a new ‘matter.’”  To
the contrary, a report’s adequacy does not depend on whether the expert uses
any particular “magical words.”  Wright, 79 S.W.3d at 53 (concluding
that nothing in Act’s plain language suggests that expert’s report had to express
causal relationship in terms of “reasonable medical probability”); Costello,
141 S.W.3d at 249 (noting that no particular term or phrase is required for an
expert to establish causation).  Thus, the mere absence of the words “cause” or
“causation” in Murphy’s original report does not render her report inadequate
on the issue of causation.





[7] 
Although Lucas served Murphy’s curriculum vitae on Rosemont after she had
served Murphy’s original expert report, Murphy’s qualifications were included
within the body of her expert report.  In her report, Murphy details her
qualifications as follows:

I am a registered nurse by
the State of Texas and board certified in gerontological nursing by the
American Nurses’ Credentialing Center.  I have over thirty-five years of
extensive experience as a registered nurse involving the care of individuals in
hospital and critical care environments, in the long-term care and assisted
living environments, and in the management and supervision of all levels of
staff.  I am currently a faculty member of the Department of Vocational Nursing
at San Jacinto College, north campus.

            “[T]he purpose of the
curriculum vitae requirement is to permit the trial court to perform its ‘gatekeeper’
function by assessing the qualifications, experience, and expertise of the
expert.”  See Univ. of Tex. Med. Branch at Galveston v. Simmons, No.
14-09-00246-CV, 2009 WL 4810296, at *3 (Tex. App.—Houston [14th Dist.] Dec. 15,
2009, no pet.) (mem. op.) (quoting Carreras v. Marroquin, No.
13-05-082-CV, 2005 WL 2461744, at *2 (Tex. App.—Corpus Christi Oct. 6, 2005,
pet. denied) (mem.op.)).  Murphy’s report contained sufficient information to
permit the trial court to determine whether she was qualified to testify
regarding causation.  See Carreras, WL 2461744, at *2 (concluding that
expert’s report which did not include curriculum vitae as separate document but
which stated “I am Board Certified,” “I am a Certified Medical Review Officer,”
and “I am a Certified Independent Medical Examiner” provided sufficient
information to allow trial court to determine whether expert was qualified).  Further,
Murphy’s report fairly apprised Rosemont of the fact that she was not a
licensed physician.