

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00263-CV

_____

MAY HA GOETSCH, A.C.N.P.; ALVIN UCHENNA ANENE, M.D.;
JAGADESHWAR REDDY, M.D.; SATHISHKUMAR SEELIYUR DURAISWAMY,
M.D.; BRANT ERWIN, APRN, AGACNP-BC; JAY ARVIND PATEL, D.O.;
BAYLOR ALL SAINTS MEDICAL CENTER; AND CENTURY INTEGRATED
PARTNERS, INC., Appellants

V.

DEANNA ROLLS, INDIVIDUALLY AND AS WRONGFUL DEATH
BENEFICIARY OF DAVID ROLLS, DECEASED, AND AS REPRESENTATIVE
OF THE ESTATE OF DAVID ROLLS, DECEASED; AND WANDA YATES,
Appellees

---

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-307517-19

---

Before Sudderth, C.J.; Birdwell and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

David Rolls died after emergency surgery, and his family sued the involved healthcare providers and their employers. The defendants moved to dismiss the suit because they asserted they had not been timely served with the required expert report. The trial court denied the motion, and the defendants appeal that denial. We conclude that the expert-report deadline was suspended by a mandatory, statutory stay; thus, the claims were not subject to dismissal for a failure to comply with the deadline. Therefore, we affirm the trial court's denial order.

## I. BACKGROUND

David was admitted to appellant Baylor All Saints Hospital (BASH) for an emergency laparoscopic cholecystectomy to remove his gallbladder. Over the next eight days, he experienced postoperative internal bleeding, and a radiology embolization was performed to try to stop the hemorrhage. Shortly after the embolization and while being transferred back to his room after the procedure, David went into cardiac arrest and had to be placed on artificial life support. This support was discontinued eleven days after the cholecystectomy had been performed, and David died.

On April 22, 2019, David's wife and mother—appellees Deanna Rolls and Wanda Yates—sued BASH and many of the doctors and nurses (and their employers) involved in David's hospitalization and treatment, alleging that each had been negligent. These healthcare-liability claims were governed by the Medical Liability

Act, which required Rolls and Yates to serve on each defendant an expert report addressing liability and causation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (j). Such reports must be served no later than 120 days after the defendant's answer is filed. *See id.* § 74.351(a). Each defendant answered Rolls and Yates's petition between May 10 and May 24, 2019.

Capson Physicians Insurance Company, which was defendant DFW Critical Care, LLC's liability insurer, had been placed in receivership in February 2019, and the receivership court had stayed any actions involving Capson's insureds until June 28, 2019. *See* Tex. Ins. Code Ann. §§ 443.008(d), 443.051. On that date, the receivership court declared Capson insolvent and entered a liquidation order. *See id.* §§ 443.058, 443.151. To ensure payment of Capson's contractual obligations, the Texas Property and Casualty Insurance Guaranty Association (the Association) became responsible for Capson's covered claims. *See id.* §§ 462.002, 463.101, 463.253(b). An automatic six-month stay—until December 28, 2019—was thereby triggered as of the date of the liquidation order to allow the Association to properly defend Capson's insureds against Rolls and Yates's claims. *See id.* § 462.309(a).

DFW Critical and its employee, defendant Margaret Adelia Davis, N.P., quickly notified the trial court of the automatic, mandatory six-month stay and asked for an entry of an order recognizing "this automatic stay and ordering [that] the stay applies to all parties in this proceeding and applies for all purposes." On July 25, 2019, the trial court found the automatic-stay notice to be "well taken" and entered an order

3

removing the case from the trial court's "active docket of pending cases" and staying the case "as to all parties and for all purposes" until December 28, 2019, when the case would be "reinstated to the Court's docket of active pending cases."[1] *See id.* § 462.309(b). In so ordering, the trial court was faithfully following the express language of Section 462.309: "The stay applies to each party to the proceeding and the proceeding is stayed for all purposes." *Id.* Indeed, the trial court cited Section 462.309 in its order.

On December 30, 2019, two days after the expiration of the statutory six-month stay and approximately seven months after the answers were filed, Rolls and Yates served on each defendant expert reports regarding liability and causation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (j). Except for DFW Critical and Davis,[2] all defendants objected to the sufficiency of the expert reports within 21 days after the report was served. *See id.* § 74.351(a), (*l*). Each also moved to dismiss Rolls and Yates's claims because they had failed to serve their expert report within 120 days after each defendant had answered in May 2019, instead waiting until after the six-month stay expired. *See id.* § 74.351(a)–(b). The trial court denied the motions to dismiss to the extent each was "based on the failure to serve expert reports within the 120-day deadline." The trial court did not rule on the defendants' objections to the

---

[1] On January 23, 2020, the trial court formally lifted the stay, noting that the receivership court's stay had already expired on December 28, 2019.

[2] DFW Critical and Davis are not parties to this appeal.

sufficiency of the reports. The affected defendants noticed their interlocutory appeal of the denial, which all parties concede we have jurisdiction to consider.[3] *See id.* § 51.014(a)(9) (permitting interlocutory appeal from order that "denies all or part of the relief sought by a motion" for dismissal based on a failure to timely serve an expert report); *cf. Badiga v. Lopez*, 274 S.W.3d 681, 684–85 (Tex. 2009) (recognizing right to "immediate" appeal from dismissal denial when no expert report timely served); *Wheeler v. Luberger*, No. 14-14-00992-CV, 2016 WL 146008, at *2–3 (Tex. App.—Houston [14th Dist.] Jan. 12, 2016, no pet.) (mem. op.) (finding no jurisdiction to consider appeal from denial of dismissal based on failure to timely serve any expert report because appellant waited to appeal timeliness issue until after objections to late-filed report were determined).

## II. APPLICABILITY OF RECEIVERSHIP STAY TO EXPERT-REPORT REQUIREMENT

We apply an abuse-of-discretion standard of review to the denial of a motion to dismiss based on an asserted failure to comply with the 120-day deadline in Section 74.351(a). *See Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam). The Healthcare Parties assert that Rolls and Yates's claims were required to be dismissed (and that the trial court's failure to do so was an abuse of

---

[3]The appellants are May Ha Goetsch, A.C.N.P.; Alvin Uchenna Anene, M.D.; Jagadeshwar Reddy, M.D.; Sathishkumar Seeliyur Duraiswamy, M.D.; Brant Erwin, APRN, AGACNP; Jay Arvind Patel, D.O.; BASH; and Century Integrated Partners, Inc. We will refer to the appellants as the Healthcare Parties.

5

discretion) because Rolls and Yates did not serve an expert report until 100 days after the expiration of the 120-day statutory deadline to do so. Although the receivership court's stay was in effect during this time, the Healthcare Parties contend that the stay did not apply to the expert-report deadline and only applied to DFW Critical and Davis, not to the Healthcare Parties. Finally, the Healthcare Parties argue in the alternative that even if the stay applied to them and to the expert-report deadline, the stay cannot trump the expert-report deadline. For the following reasons, we disagree with the Healthcare Parties and conclude that the automatic stay based on Capson's insolvency extended to the claims against the Healthcare Parties and to the expert-report deadline. *See, e.g.*, *Campbell v. Kosarek*, 44 S.W.3d 647, 650 (Tex. App.—Dallas 2001, pet. denied) ("There were no words to limit the abatement to the cause of action against the insurance company, and we conclude it therefore operated to abate the cause as to all parties and claims. . . . We conclude that, by virtue of the abatement order, Campbell was not required to file expert reports during the abatement period."); *Tibbetts v. Gagliardi*, 2 S.W.3d 659, 664 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("Because the [prior version of Section 462.309 of the] Insurance Code stays 'all [judicial] proceedings' during the pendency of a stay order, Appellant was not required to file exp[e]rt reports during such period of abeyance."); 44 Michael P. Penick, *Texas Practice Series: Medical Malpractice* § 10:25 (4th ed. 2020) ("[I]f an insured's carrier goes into receivership, the date for mandatory filing of the patient's Chapter 74 expert [report] is stayed.").

6

## A. THE PLAIN LANGUAGE OF THE STATUTORY STAY APPLIED TO THE EXPERT-REPORT DEADLINE AND TO THE HEALTHCARE PARTIES

The automatic stay at issue in this appeal arose under Section 462.309 of the Insurance Code:

> (a) To permit the association to properly defend a pending cause of action, a proceeding in which an impaired insurer is a party or is obligated to defend a party in a court in this state . . . is stayed for:
>
> > (1) a six-month period beginning on the later of the date of the designation of impairment or the date an ancillary proceeding is brought in this state; and
> >
> > (2) a subsequent period as determined by the court, if any.
>
> (b) The stay applies to each party to the proceeding and the proceeding is stayed for all purposes.
>
> (c) A deadline imposed under the Texas Rules of Civil Procedure or the Texas Rules of Appellate Procedure is tolled during the stay. Statutes of limitation or repose are not tolled during the stay, and any action filed during the stay is stayed upon the filing of the action.

Tex. Ins. Code Ann. § 462.309(a)–(c). This statute plainly applies to each party to a proceeding involving an impaired insurer and stays such a proceeding for all purposes; thus, the automatic stay here applied not only to the Healthcare Parties but also to the statutory, procedural expert-report deadline. *See Campbell*, 44 S.W.3d at 650; *see also* Tex. Gov't Code Ann. § 311.011(a) (providing statutory words and phrases shall be interpreted in context and according to common usage); *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019) ("In interpreting statutes, we must look to the plain language, construing the text in light of the statute as a whole."); *RSUI Indem. Co. v.*

7

*The Lynd Co.*, 466 S.W.3d 113, 124 (Tex. 2015) (recognizing "all" defined as "the whole number, quantity, or amount" or "the whole of" (quoting Merriam-Webster Dictionary)); *Every*, Merriam-Webster Dictionary, http://merriam-webster.com/dictionary/every (last visited Feb. 10, 2021) (defining "every" as "being each individual or part of a group without exception"). Nothing in the plain language or context of Section 462.309 indicates that either the expert-report deadline in a healthcare-liability case or parties not connected to an impaired insurer are excepted from the stay's applicability. *See* Tex. Ins. Code Ann. §§ 462.002(1)–(2), 462.003 (requiring Chapter 462 to be liberally construed to "provide a mechanism for the payment of covered claims" and to "avoid financial loss to claimants or policy holders because of an insurer's impairment"); *RSUI Indem.*, 466 S.W.3d at 124 ("We cannot construe these undefined words to mean things they do not ordinarily mean."); *Willard v. Davis*, 881 S.W.2d 907, 911 (Tex. App.—Fort Worth 1994, orig. proceeding) (holding predecessor statute to Section 462.309 is "unambiguous and expressly require[s] the granting of a six months' stay").

## B. THE HEALTHCARE PARTIES' ARGUMENTS CANNOT CIRCUMVENT THIS PLAIN LANGUAGE

First, the Healthcare Parties assert that because the trial court's stay order and Section 462.309 do not specifically state that the 120-day, expert-report deadline was stayed, that deadline was not affected. But the trial court's language, which tracked Section 462.309(b), specifying that Rolls and Yates's suit was stayed for "all

8

purposes," was clear: The entirety of the case was stayed. *See Campbell*, 44 S.W.3d at 650. To require the specificity urged by the Healthcare Parties would ignore the inclusive word "all" in Section 462.309(b) and in the trial court's order. We decline to do so. *See El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521, 531–32 (Tex. 2020) ("[W]e read the statute to give effect to every word."); *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."); *Campbell*, 44 S.W.3d at 650 ("There were no words [in the trial court's abatement order] to limit the abatement to the cause of action against the insurance company, and we conclude it therefore operated to abate the cause as to all parties and claims.").

Second, the Healthcare Parties assert that Rolls and Yates could have observed the stay while also properly and timely filing their expert reports: Rolls and Yates "could have served [their] reports without violating the stay by simply serving [their] expert reports on each non-Capson-insured party and not serving anything on the Capson-insured parties." Again, this argument ignores the plain language of the statutory stay, which extends its reach to "each party" to a proceeding involving an insolvent insurer such as Capson. Tex. Ins. Code Ann. § 462.309(b). We defer to the statute's plain language and not to the Healthcare Parties' preferred interpretation. *See Hegar v. Am. Multi-Cinema, Inc.*, 605 S.W.3d 35, 41 (Tex. 2020) ("When the words read in context are clear, they determine intent; a court must never rewrite them under the

9

guise of interpretation."). That plain language extends the stay to every party to the proceeding, even "non-Capson-insured" parties.

Third, according to the Healthcare Parties, "proceeding" in Section 462.309(b) does not include the expert-report deadline because such reports are not filed with the court. But nothing in the plain language of Section 462.309 or the common usage of the word proceeding indicates that the stay is limited to filings or to only those portions of the proceeding requiring "judicial involvement," as argued by the Healthcare Parties. *See Proceeding*, Black's Law Dictionary (11th ed. 2019) (defining proceeding as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment"). Instead, "all purposes" of an implicated proceeding are stayed.[4] Tex. Ins. Code Ann. § 462.309(b).

Fourth, the Healthcare Parties contend that because the Section 462.309 stay expressly does not toll "[s]tatutes of limitation or repose," *id.* § 462.309(c), the 120-day deadline was not tolled because that deadline has been described as "a statute-of-limitations-type deadline," *Ogletree v. Matthews*, 262 S.W.3d 316, 319 (Tex. 2007). By equating Section 74.351(a)'s deadline to a statute of limitations, the Supreme Court in *Ogletree* was acknowledging that the failure to comply with the deadline could lead to

---

[4]Rolls and Yates argue that the application of the Healthcare Parties' not-a-proceeding argument would result in an absurdity: The stay would not apply to the expert-report deadline but would apply to the Healthcare Parties' deadline to object. We agree that this apparent consequence seems to belie the Healthcare Parties' position, but we also agree with the Healthcare Parties that this possible absurdity is irrelevant here.

10

"harsh results" as can a limitations statute; the Court was not holding that the 120-day service deadline is, in fact, a statute of limitations. *Id.* at 319–20. The Court relied on the statute-of-limitations analogy to illustrate that the expert-report deadline similarly could not be extended by a court and required dismissal if ignored, not to categorize the procedural deadline as an enacted limitations statute. *See Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 767 (Tex. 2011) (per curiam) (describing *Ogletree*'s "limitations-type" holding to be a recognition of a trial court's lack of discretion regarding the 120-day deadline). Indeed, a statute of limitations is "a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)." *Statute of Limitations*, Black's Law Dictionary (11th ed. 2019). Section 74.351 is not such a statute. *See*, *e.g.*, Tex. Civ. Prac. & Rem. Code Ann. § 74.251(a) (providing express two-year statute of limitations for healthcare-liability claims). Indeed, Subchapter H of the Medical Liability Act, which includes Section 74.351, is entitled "Procedural Provisions," and courts have referred to Section 74.351(a) as a "procedural requirement." *Id.* §§ 74.351–74.352; *Lance Thai Tran, DDS, PA v. Chavez*, No. 14-14-00318-CV, 2015 WL 2342564, at *1 (Tex. App.—Houston [14th Dist.] May 14, 2015, no pet.) (mem. op.); *see also Tenet Hosps. Ltd. v. Boada*, 304 S.W.3d 528, 537 (Tex. App.—El Paso 2009, pet. denied). Section 74.351 is a procedural provision, not a statute of limitations. Thus, the limitations exception to the reach of the statutory stay found in Section 462.309(c) does not apply here.

## C.  THE STATUTORY STAY DOES NOT
## CONFLICT WITH THE EXPERT-REPORT DEADLINE

The Healthcare Parties argue in the alternative that the stay provided for in Chapter 462 of the Insurance Code is in irreconcilable conflict with Chapter 74 of the Civil Practices and Remedies Code; thus, the Chapter 462 stay must yield to the Chapter 74 deadline.  To support their argument, the Healthcare Parties rely on Section 74.002, which provides that Chapter 74 controls to the extent of a conflict with another law.  Tex. Civ. Prac. & Rem. Code Ann. § 74.002(a).  Chapter 462 includes a similar conflict-of-laws provision: "[I]f this chapter conflicts with another statute relating to the association, this chapter controls."  Tex. Ins. Code Ann. § 462.010.

We conclude, however, that the statutes are not irreconcilable.  Section 74.351 implicitly does not allow trial-court extensions of the expert-report deadline, only extensions by party agreement.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).  But the mandatory stay in Section 462.309 is not an extension of a procedural deadline; rather, it is a stay of the entire proceeding to guarantee that an insured is sufficiently represented by the Association because the insurer is impaired.  *See Willard*, 881 S.W.2d at 911 (interpreting predecessor statute to Section 462.309).  *Compare Extension*, Black's Law Dictionary (11th ed. 2019) (defining extension as a "period of additional time to take an action"), *with Stay*, Black's Law Dictionary (11th ed. 2019) (defining stay as the "postponement or halting of a proceeding").  Even though the

120-day deadline was automatically halted to ensure a proper defense for two of the named defendants to Rolls and Yates's claims, the purpose of Section 74.351's procedural deadline—"to identify and deter frivolous claims while not unduly restricting a claimant's rights"—was not offended. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 502 (Tex. 2015). The expert-report deadline and the stay may be read in tandem, allowing both to be enforced and honoring both statute's purposes; thus, they do not irreconcilably conflict. *See, e.g.*, *Ferrell v. Univ. of Tex. Sys.*, 583 S.W.3d 805, 810–12 (Tex. App.—El Paso 2019, no pet.) (recognizing that if both statutory provisions' purposes can be given effect, they are not in conflict because "we must harmonize statutory provisions and avoid reading language as a nullity, if at all possible"); *cf. Lomax v. State*, 233 S.W.3d 302, 312 (Tex. Crim. App. 2007) ("Two statutes irreconcilably conflict when only one of them can apply to a particular situation."). *See generally Tibbetts*, 2 S.W.3d at 664 ("Because the Insurance Code stays 'all [judicial] proceedings' during the pendency of a stay order, Appellant was not required to file exp[e]rt reports during such period of abeyance.").

## III. CONCLUSION

The plain language of the automatic statutory stay and of the trial court's order made the stay applicable to the Healthcare Parties and to the expert-report deadline. The automatic stay and the procedural deadline do not irreconcilably conflict. Thus, the trial court did not abuse its discretion by denying the Healthcare Parties' motion to dismiss Rolls and Yates's claims for failure to timely serve expert reports during the

13

mandatory stay.  We overrule the Healthcare Parties' issue and affirm the trial court's order.  *See* Tex. R. App. P. 43.2(a).

/s/ Brian Walker

Brian Walker
Justice

Delivered:  February 25, 2021