

# NUMBER 13-23-00234-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DR. NOLAN PEREZ AND
GASTROENTEROLOGY
CONSULTANTS OF SOUTH
TEXAS, PLLC,                                                                   Appellants,

v.

ELIZABETH HANAWA AND
BEN HANAWA,                                                                    Appellees.

## On appeal from the 138th District Court
of Cameron County, Texas.

## MEMORANDUM OPINION

**Before Justices Longoria, Silva, and Peña**
**Memorandum Opinion by Justice Silva**

Appellants Dr. Nolan Perez and Gastroenterology Consultants of South Texas,

PLLC (GCST), appeal the trial court's denial of their motion to dismiss, which challenged

appellees Elizabeth Hanawa and Ben Hanawa's preliminary expert report for a medical malpractice claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. By a single issue, appellants argue that the expert report was deficient because it does not explain how or why Dr. Perez's alleged breach of care caused Elizabeth's injuries. We reverse and remand.

## I. BACKGROUND

The Hanawas filed their original petition alleging that Dr. Perez, while working for GCST, performed an endoscopic retrograde cholangiopancreatography (ERCP) on Elizabeth.[1] The Hanawas alleged that during the procedure, Dr. Perez perforated Elizabeth's duodenum, a part of the small intestine immediately beyond the stomach, resulting in further injuries. The Hanawas subsequently provided appellants with an expert report (the report) written by gastroenterologist, Dr. Kenneth Vega. *See id.* The report identifies Dr. Vega's qualifications, the materials he relied on to make his report, a summary of medical facts, the standard of care, and the alleged breaches by Dr. Perez.

### A. The Report

According to the report, Elizabeth presented to GCST with right upper quadrant pain. After an examination and ultrasound, a GCST physician discovered a possible stone in one of Elizabeth's bile ducts. The physician recommended an ERCP, which Dr. Perez performed. The ERCP "revealed a periampullary diverticulum[,] and [a] careful common bile duct cannulation [was] performed. . . . Following that[,] a biliary sphincterotomy was

---

[1] The Hanawas filed an amended petition that was substantially and materially similar to the original petition.

performed," which extracted small stone fragments and sludge. Within about twenty minutes of the procedure, Elizabeth started complaining "of abdominal distension followed by nausea and vomiting." GCST administered medication to help with Elizabeth's nausea, vomiting, and pain; however, Elizabeth continued to complain of discomfort, prompting Dr. Perez to order x-rays of her abdomen.

The x-rays did not reveal the cause of Elizabeth's symptoms, and the radiologist recommended a computed topography (CT) scan "if clinically warranted." Dr. Perez ordered an abdominal CT scan without contrast, which revealed "duodenal wall thickening and a focal area with air collection . . . most likely representing [a] walled off perforation." However, the radiologist suggested repeating the scan due to "impending free air." Instead, Elizabeth was admitted to the hospital where she received a family medicine consult. Her symptoms persisted into the next day and a surgical consult was ordered. The surgeon recommended "conservative therapy" but suggested exploratory surgery in six to twelve hours if Elizabeth did not improve. Approximately three hours later, the surgeon conducted exploratory surgery due to Elizabeth's worsening condition and found a "gross perforation around the right colon" and "gross bilious spillage . . . thought to be due to perforation of the second portion of the duodenum." The surgeon repaired the perforations, and although Elizabeth "tolerated the surgery well," she developed sepsis and was admitted to a long-term acute care hospital.

The report explained that

[t]he standard of care when managing a patient with increasing abdominal pain and distension following an ERCP with intervention is to exclude perforation with radiologic evaluation, including CT abdomen with and without contrast, along with immediate surgical consultation. Depending on

3

the perforation discovered, intervention can then occur to limit morbidity[2] or mortality.

Dr. Vega opined that within a reasonable medical probability

> Dr. []Perez breached the requisite standards of care with respect to [Elizabeth] from 7-8 September 2018 by failing to adequately evaluate and obtain urgent surgical consultation when concerned about perforation following ERCP. When [Elizabeth] developed abdominal pain and distension immediately following ERCP, Dr. Perez should have ordered a CT abdomen including contrast to determine if perforation is present. This type of study could have determined if free per[f]oration was present when compared to a non-contrast study, indicating need for emergent repair. Furthermore, immediate surgical consultation would have provided input into care when such perforation is a concern. Rapid recognition of free perforation combined with rapid surgical repair would have limited morbidity following the perforation event.

## B. Objection to the Report and Motion to Dismiss

Appellants filed an objection to the Hanawas' expert report along with a motion to dismiss.[3] Appellants asserted that the report "is vague and speculative in that it does not explain how much sooner [Dr. Perez] should have ordered the radiology study" and "assumes that Dr. Perez could control how much sooner the radiological studies were done, and that he could determine what type of study was performed." Appellants also claim that the report "is completely speculative as to how the alleged breach would have changed [Elizabeth's] treatment, or her outcome in any way."

Appellants also challenged Dr. Vega's assertions that had Dr. Perez ordered a

---

[2] Morbidity means "a diseased state or symptom," "a complication or undesirable side effect following surgery or medical treatment," or "the incidence of disease [or] the rate of illness." *Morbidity*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/morbidity (last visited on January 29, 2024).

[3] Our recitation of the appellants' objections refers to their first amended objection and motion to dismiss.

4

surgical consult sooner, the surgeon would have ordered emergency surgery. Appellants argued that Dr. Vega was unqualified to opine on the standard of care for a surgeon and that Dr. Vega's "assumptions [were] completely inaccurate." Appellants noted that the records demonstrate that the surgeon recommended continuing conservative treatment with a possible need for exploratory surgery in six to twelve hours if Elizabeth did not improve. Finally, appellants complained that Dr. Vega's opinion that if Dr. Perez had ordered radiological studies and surgical consultation sooner than he did, Elizabeth's "morbidity or mortality would have been limited" is vague, speculative, and conclusory.

As to GCST, appellants argued that

> Dr. Vega's report is completely lacking in criticisms of [GCST]. The report does not set out the standard of care for the clinic, its staff, or establish causation. Therefore, [GCST] objects to Dr. Vega's qualifications as it relates to it, and to his report because it does not [i]nform this defendant of the specific conduct called into question or provide a basis for the trial court to conclude the claims have merit.

Ultimately, appellants requested the trial court to sustain its objection to the report and dismiss the Hanawas' suit with prejudice because the report was so deficient as to constitute no report at all.

## C.    Response to Objection

The Hanawas responded to appellants' objection to the report, arguing that the report sufficiently linked the alleged substandard care to Elizabeth's injuries. The Hanawas noted that the report stated that Elizabeth "did develop sepsis due to the perforation[,] requiring antibiotics." The Hanawas further explained that Dr. Vega was "not necessarily critical in his report of the time lapse between the onset of [Elizabeth's] signs of a serious medical emergency and the taking of diagnostic images by way of x-rays and

5

CT scans." Rather, Dr. Vega was critical of "Dr. Perez's failure to obtain a CT with contra[s]t even after the radiologist who read the studies suspected 'impending free air' and suggested additional studies." The Hanawas argued that they were not required to set out a standard of care or establish causation for GCST because a health care liability claim based on vicarious liability may be established by an expert report that is adequate to implicate the employer.

## D.     Trial Court's Ruling

The trial court denied appellants' motion to dismiss. This interlocutory appeal followed. *See id.* § 51.014(a)(9).

## II.     STANDARD OF REVIEW

We review a trial court's ruling on a motion to dismiss for failure to comply with § 74.351's expert report requirements for abuse of discretion. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). "When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for the trial court's judgment." *Id.* (citing *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 41–42 (Tex. 1989)). The denial of a motion to dismiss under § 74.351(b) is interlocutory and may be appealed immediately. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9); *see Ogletree v. Matthews*, 262 S.W.3d 316, 319 (Tex. 2007). The trial court's decision must result in a "clear and prejudicial error" to be reversible. *Flores*, 777

6

S.W.2d at 41–42.

### III.    APPLICABLE LAW

**A.    Expert Report**

A party who brings a health care liability claim shall, "not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). The claimant must also serve the curriculum vitae of each expert who provided a report. *Id.* Each defendant must object to the sufficiency of the report within twenty-one days of receiving the report or twenty-one days of the filing of the defendant's answer. *Id.* Failure to timely serve the expert report shall result in the trial court dismissing the suit with prejudice. *Id.* § 74.351(b)(2)*.* Conversely, failure to timely object results in a waiver of any objections. *Id.* § 74.351(a). The court may grant one thirty-day extension to cure a report that is found to be deficient. *Id.* § 74.351(c). In general, "trial courts should err on the side of granting claimants' extensions." *Samlowski v. Wooten*, 332 S.W.3d 404, 411 (Tex. 2011). "The purpose of the expert report requirement is to deter frivolous claims, not to dispose of claims regardless of their merits." *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011).

The report must "represent an objective good faith effort to comply" with the definition of an expert report. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*). To meet the requirements of a report, it must represent a "fair summary of the expert's opinions" of (1) the applicable standard of care, (2) the failure of the health care provider to meet them, and (3) the causal relationship between that failure and the injury, harm, or damages

7

claimed. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 457 (Tex. 2017). At a minimum, the expert report must "inform the defendant of the specific conduct the plaintiff has called into question" and "provide a basis for the trial court to conclude that the claims have merit." *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010) (quoting *Bowie Mem'l Hosp.*, 79 S.W.3d at 52). A report does not constitute a good faith effort if it omits any of the statutory requirements. *Id.* (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001)). Although the claimant is not required to present evidence in the report as if they were actually litigating the merits, they may not merely state the expert's conclusions regarding the standard of care, breach, and causation. *Id.* The report must explain the basis of the expert's statements to link his or her conclusions to the facts. *Id.*

Since the enactment of the Texas Medical Liability Act (the Act), codified in Chapter 74 of the Texas Civil Practice and Remedies Code, the Supreme Court of Texas has clarified what constitutes an adequate expert report. *See Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 226 (Tex. 2018) (per curium); *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625 (Tex. 2013); *Scoresby*, 346 S.W.3d at 549–50; *Samlowski*, 332 S.W.3d at 411; *Jelinek*, 328 S.W.3d at 539–40; *Ogletree*, 262 S.W.3d at 322. The Court has recognized that the Act distinguishes between a deficient report and no report at all. *See Ogletree*, 262 S.W.3d at 320–21. The court has also noted that a report may be so deficient as to constitute no report at all. *See Scoresby*, 346 S.W.3d at 556 (concluding that a statement by an expert that the defendant violated the standard of care and as a result caused damages, without more, warranted an extension rather than dismissal, but

8

noting that a sheet of paper with "expert report" written on it "would mock the Act's requirements"). A report that is deemed deficient should result in a thirty-day extension to cure the deficiencies, while a report so deficient as to constitute no report at all should result in dismissal. *See id.* at 557.

### 1. Standard of Care and Breach

The standard of care relevant to a healthcare provider is what an ordinarily prudent healthcare provider would do under the same or similar circumstances. *Strom v. Mem'l Hermann Hosp. Sys.*, 110 S.W.3d 216, 222 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (citing *Palacios*, 46 S.W.3d at 880). "Whether a defendant breached the standard of care due [to] a patient cannot be determined without 'specific information about what the defendant should have done differently.'" *Id.* (quoting *Palacios*, 46 S.W.3d at 880).

### 2. Causation

"[A] plaintiff asserting a health care liability claim based on negligence, who cannot prove that her injury was proximately caused by the defendant's failure to meet applicable standards of care, does not have a meritorious claim." *Zamarripa*, 526 S.W.3d at 460. Addressing causation in the expert reports, the supreme court has noted that

> [p]roximate cause has two components: (1) foreseeability and (2) cause-in-fact. For a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission—*i.e.*, but for the act or omission—the harm would not have occurred.

*Id.* (quoting *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013) (per curiam)).

No magic words, such as "proximate cause" or "foreseeability," are necessary. *Id.* at 460. Similarly, "merely incanting words does not suffice." *Id.* The expert report must sufficiently

9

demonstrate that the behavior called into question caused the harm, without leaving too many analytical gaps for the trial court. *Abshire*, 563 S.W.3d at 226.

"An expert must explain, based on facts set out in the report, how and why the breach caused the injury." *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam) (citing *Jelinek*, 328 S.W.3d at 539–40). "A bare expert opinion that the breach caused the injury will not suffice." *Id.* (citing *Jelinek*, 328 S.W.3d at 539–40). "To determine whether the expert's causation conclusions are detailed enough, as with standard of care and breach, we read the expert's conclusions on causation in the context of the entire report, not piecemeal or in a vacuum." *Bedi v. Cornett*, 635 S.W.3d 775, 782 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (citing *Harvey v. Kindred Healthcare Operating, Inc.*, 578 S.W.3d 638, 653 (Tex. App.—Houston [14th Dist.] 2019, no pet.)).

## IV. ANALYSIS

Appellants complain that the report fails to satisfy the causation aspect of the expert report requirement.[4] According to appellants, the report "fails to connect the sepsis to a breach of the standard of care by Dr. Perez." Moreover, the only statement "that might be considered a causation opinion recites simply, '[r]apid recognition of free perforation combined with rapid surgical repair would have limited morbidity following the perforation event.'" Appellants argue that such a causation opinion is conclusory and as such is insufficient under § 74.351. *See Jelinek*, 328 S.W.3d at 539. The Hanawas, in

---

[4] Appellants do not challenge the timeliness of the expert report, Dr. Vega's qualifications, or his recitation of the standard of care or the alleged breach. Moreover, appellants do not challenge Dr. Vega's failure to apply the standard of care, alleged breach, or causation as it relates to GCST as they did in the trial court.

10

contrast, contend the report is sufficient to establish the causal relationship between the breach and the injury, harm, or damages claimed.

In *Jelinek*, the supreme court examined the sufficiency of an expert's conclusion that the physician-defendant's "breach of the appropriate standard of care in 'reasonable medical probability, resulted in a prolonged hospital course and increased pain and suffering being experienced by [the patient].'" 328 S.W.3d at 539. The court concluded that the report was conclusory on causation where it "offer[ed] no more than a bare assertion that [the physician's] breach resulted in increased pain and suffering and a prolonged hospital stay. Beyond that statement, the report offer[ed] no explanation of how the breach caused the injury." *Id.* at 540. The Hanawas attempt to contrast the report in the present case from that in *Jelinek* by casting the *Jelinek* report as failing "to state that the negligent act of omitting those antibiotics would have made a difference in treating the infection," whereas here, the report states that "proper evaluation and surgical repair would have limited morbidity." We believe that is a distinction without a difference.

In *Jelinek*, the supreme court did not strike down the report for failing to state that breaching the standard of care "would have made a difference," but rather, the court found it to be deficient because it failed to explain how the breach caused the injury. *See id.* Similarly, the report before us fails to explain how Dr. Perez's breach—failing to order a CT scan with contrast—caused Elizabeth's injury. Indeed, it is not even entirely clear from the report what injury, harm, or damages Elizabeth is complaining of. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). Nonetheless, Dr. Vega's statement that "[r]apid recognition of free perforation combined with rapid surgical repair would have limited

11

morbidity," even when considered with the entire report, is a conclusory statement that does no more than opine that the breach potentially caused *some* injury. *See Van Ness*, 461 S.W.3d at 142; *Bedi*, 635 S.W.3d at 782.

Appellants also argue that the report does not address the foreseeability component of causation. *See Zamarripa*, 526 S.W.3d at 460. The Hanawas respond that, "If [it] was not foreseeable to Dr. Perez [that delaying a CT scan and surgery would increase morbidity], he probably should not be practicing medicine." The Hanawas go on to argue that *Zamarripa* is distinguishable because the supreme court found the expert report deficient as to the physician but not the hospital. *See id.* at 461. However, nothing in *Zamarripa* limits the foreseeability component of proximate cause to institutional defendants as opposed to individual physicians. *See id.* at 460–61. Indeed, the supreme court expressly noted that failing to require an expert report to address foreseeability "simply confuses the matter." *Id.* at 460 (disavowing *Valley Reg'l Med. Ctr., Inc. v. Gonzalez*, No. 13-12-00572-CV, 2013 WL 2298470, at *3 (Tex. App.—Corpus Christi—Edinburg 2013, no pet.) (mem. op.); and *Rio Grande Reg'l Hosp. v. Ayala*, No. 13-11-00686-CV, 2012 WL 3637368, at *19 (Tex. App.—Corpus Christi—Edinburg 2012, pet. denied) (mem. op.)).

Because the expert report's assessment of causation is merely conclusory and altogether fails to address foreseeability, the report does not constitute a good faith effort and the trial court abused its discretion by denying appellants' motion. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b), (*l*), (r)(6); *Zamarripa*, 526 S.W.3d at 460. However, the expert report is not so deficient as to constitute no report at all; accordingly, the Hanawas

12

should be given an opportunity to cure the deficiencies in the report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c); *Scoresby*, 346 S.W.3d at 556–57 (concluding that the expert report was sufficient to warrant a remand to cure deficiencies in the report, despite the report's failure to state the standard of care where it otherwise contained the opinion of an individual with expertise that the claim has merit and implicated the defendant's conduct). Appellants' sole issue is sustained to the extent they argue the trial court erred in overruling their objection to the expert report but overruled to the extent that they argue the trial court erred by failing to dismiss the Hanawas's suit.

## V. CONCLUSION

We reverse the trial court's judgment and remand the matter for further proceedings consistent with this opinion.

CLARISSA SILVA
Justice

Delivered and filed on the
29th day of February, 2024.